In re TRIPLE A SUGAR CORPORATION, formerly Pine Tree Sugar Beet Growers, Inc., Debtor.

MAINE GUARANTEE AUTHORITY,

and

Northern National Bank, Plaintiffs,

v.

TRIPLE A SUGAR CORPORATION, formerly Pine Tree Sugar Beet Growers, Inc., et al., Defendants.

Bankruptcy No. 77–63ND.
Adv. 77–72.

United States Bankruptcy Court, D. Maine.

March 17, 1980.

Jeremiah D. Newbury, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for debtor.

Hugo A. Olore, Jr., Phillips, Olore & Walker, Presque Isle, Me., for Northern National.

P. Benjamin Zuckerman, Verrill & Dana, Portland, Me., for Creditors' Committee.

James R. Flaker, Perkins, Thompson, Hinckley & Keddy, Portland, Me., John W. Ballou, Mitchell & Stearns, Bangor, Me., for MGA.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

The Maine Guarantee Authority [MGA], the Creditors' Committee and the debtor in possession have submitted to the court, as arbitrator, for final decision, certain issues raised by the proof of claim of the MGA and by the objection and counterclaim of the debtor in possession. The first issue for consideration by the court is whether the security interest of the MGA in personal property of the debtor was properly perfected at the commencement of these proceedings.

At the time of the purchase of its sugar refinery, Pine Tree Sugar Beet Growers, Inc. [Pine Tree] granted MGA a security interest in machinery, equipment and fixtures, which was duly perfected by the timely filing of legally sufficient financing statements correctly identifying Pine Tree Sugar Beet Growers, Inc. as the debtor. Approximately nine months later, Pine Tree concluded successful negotiations with ACLI International, Inc. [ACLI] and K. Patzenhoffer, Inc. [Patzenhoffer] for additional capital. Prior to the completion of these negotiations, Pine Tree changed its name to Triple A Sugar Corporation. ACLI and Patzenhoffer conditioned their advances to Pine Tree upon MGA's consent to a deferment of certain principal and interest payments due MGA. MGA evidenced its consent by entering into a written agreement to that effect with Triple A Sugar Corporation.[1]

The debtor in possession contends that the security interest of the MGA in personal property of the debtor was unperfected on April 14, 1977, the date of the filing of the Chapter XI petition, because the financing statements, though correct when filed, did not correctly identify the debtor following its name change. The debtor in possession concedes that the financing statements were sufficient when filed, but insists that the failure of the MGA to refile or otherwise reflect the name change vitiated the original filings and gave rise to an unperfected secret lien voidable under Bankruptcy Act § 70c. The MGA was informed in writing more than a year before the commencement of the Chapter XI proceedings that the debtor had changed its name to Triple A Sugar Corporation,[2] but was it the duty of the MGA to supplement the public record?

The version of Maine Uniform Commercial Code section 9–402 governing the instant transaction imposed no statutory duty that a secured party cause the public record to reflect a debtor name change neither contemplated nor accomplished prior to the filing of the original financing statement. *But cf. In re Kalamazoo Steel Process, Inc.,* 503 F.2d 1218 (6th Cir. 1974) [secured party aware of impending name change before

---

1. The agreement, dated March 12, 1976, states that Triple A Sugar Corporation was formerly known as Pine Tree Sugar Beet Growers, Inc.

2. *See* note 1 *supra.*

filing of original financing statement]; *In re Conger Printing Co., Inc.*, 18 UCC Rep. 224 (B.J.D.Or.1975) [parties agree to name exchange following secured transaction]. Since that time, the notice filing system has been further flawed by the enactment of Maine Uniform Commercial Code section 9–402(2)(d) expressly negating any such responsibility.[3]

■ In order to perfect a Code security interest, a secured party need only file a bare-bones financing statement, signed by the debtor, containing the name and address of the secured party, the name and a mailing address of the debtor, and a statement indicating the types of collateral.[4] The Code criteria for a sufficient financing statement are as relaxed as they are simple. A financing statement is effective notwithstanding the fact that it contains "minor errors which are not seriously misleading."[5] A financing statement remains effective for up to five years,[6] without updating, "even though the debtor's residence or place of business . . . or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed."[7]

Notice filing is so uncomplicated from the standpoint of secured parties that the large volume of reported litigation over the simple requisites of a sufficient financing statement is surprising.[8] The concomitant burdens on those forced to rely upon the public record are not inconsequential. Unless the skeletal information contemplated by section 9–402 is generously supplemented by the secured party, the burden of search may be heavy. Furthermore, the burden of further inquiry by the file searcher may be undertaken to no avail.[9] These are inevitable and therefore, presumably, intended consequences of legislative adoption of notice filing. Beyond that, however, section 9–402 makes the searcher an indemnitor against "minor" errors of the secured party,[10] a fact which has prompted this court to interpret its provisions with a view to the purposes of the Code filing system.[11] Moreover, the searcher, not the secured party, bears the burden of indexing error by the filing officer,[12] a fact which suggests the need for particular concern in circumstances where indexing correctly per-

---

3. "(2) A financing statement which otherwise complies with subsection (1) is sufficient, when it is signed by the secured party instead of the debtor if it is filed to perfect a security interest in

    (d) Collateral acquired after a change of name, identity or corporate structure or (sic) the debtor. The secured party is not required to file a new financing statement to perfect or continue to perfect a security interest after such change of name, identity or corporate structure of the debtor." Me.Rev.Stat.Ann. tit. 11 § 9–402(2)(d) (Supp.1979–80). Section 9–402(2)(d) did not become effective until March 31, 1978.

4. *See id.* § 9–402(1) (Supp.1979–80). *See id.* § 9–402(1). *See also In re Cushman Bakery*, 526 F.2d 23 (1st Cir.), *cert. denied Agger v. Seaboard Allied Milling Corp.*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1975). *See generally*, I Gilmore, *Security Interests in Personal Property* § 15.3 (1965).

5. Me.Rev.Stat.Ann. tit. 11 § 9–402(5); *id.* § 9–402(8) (Supp.1979–80).

6. *Id.* § 9–403(2); *id.* § 9–403(2) (Supp.1979–80).

7. *Id.* § 9–401(3); *id.* § 9–401(3) (Supp.1979–80).

8. The case digests under UCC § 9–402 in *Callaghan's Uniform Commercial Code—Case Digest* fill 163 pages. *See* 8 UCC Case Digest ¶¶ 9402.1–9402.41 (Callaghan & Co. 1976); *id.* ¶¶ 9402.1–9402.42 (Cum.Supp.1979).

9. "Notice filing has other advantages, which will be pointed out in due course, as well as its own peculiar weaknesses. The chief weakness is that the filed notice gives no information about the actual state of affairs. The only conclusion which can be drawn from the notice is that the parties . . . evidently intended, at the time of filing, to engage in some kind of financing transaction. No transactions may ever have taken place. . . ." *See, e. g.,* I Gilmore, *Security Interests in Personal Property* § 15.2 (1965) at 469.

10. Me.Rev.Stat.Ann. tit. 11 § 9–402(5); *id.* 9–402(8) (Supp.1979–80).

11. *See, e. g., In re Brawn*, 7 UCC Rep. 565 (Ref.D.Me.1970). *Compare In re Reeco Electric Co., Inc.*, 415 F.Supp. 238 (D.Me.1976) *with In re Raymond F. Sargent, Inc.*, 8 UCC Rep. 583 (Ref.D.Me.1970).

12. *See* Me.Rev.Stat.Ann. tit. 11 § 9–403(1) & (4).

formed fails to reveal a financing statement under the name of the debtor due to error on the part of the secured party.

The entire purpose of the Code filing system is to provide a reliable means by which to learn of the possible existence of consensual liens on property of the debtor.[13] Judicial[14] and legislative[15] sympathy for errant secured parties has weakened important Code protections designed to ensure the notice opportunity upon which true notice filing depends. Yet there appears to be little legislative inclination to preserve essential notice-filing criteria even when Code simplism threatens to deprive the notice-filing system of any notice-giving utility whatever.[16]

Financing statement errors which prevent the notice-filing system from functioning should never be considered minor, and are always misleading. As an example, a designation of the debtor as "Pine Tree Sugar Beet Growers, Inc.," rather than "Triple A Sugar Corporation," resulting in the indexing of the financing statement under a name in no way resembling the correct name of the debtor, would unquestionably foreclose access to the MGA financing statement. The failure of the MGA to supplement the public record upon learning of the name change had exactly the same effect in succeeding years. It prevented interested persons not actually aware of the name change from learning of the MGA security interest.

Maine Uniform Commercial Code section 9–402(2)(d) not only relieves the secured party of any obligation to supplement the public record in these circumstances, it attempts no coordination between the liberal statutory provisions permitting corporate name changes[17] and the statutory requirements of a sufficient financing statement under the Uniform Commercial Code, notwithstanding the fact that the Secretary of State is responsible for indexing and maintaining[18] the public records kept in connection with both statutes. In the absence of any requirement that a secured party update its financing statement following a name change by the debtor and in the interest of safeguarding the Code filing system, it would seem appropriate that there be cross-indexing. It would not be an unreasonable requirement, as a prerequisite to the validation of a corporate name change, that written notification of the pendency of an application for a change of name be provided every holder of a security interest in property of the debtor corporation, in order to enable the holder to file an amendatory financing statement within a prescribed period following a name change. Such an approach is preferable to mere cross-indexing by the Secretary of State which would not afford protection to persons relying upon the financing statement indices maintained in the various registries of deeds.[19]

There being no applicable statutory provision expressly controlling the issue[20] and no case law directly in point, the debtor in possession premises its contention that the MGA security interest is unperfected on the grounds that the failure to cause the financing statements to be amended or supplemented after the name change became known to MGA constituted a lack of good faith within the meaning of Maine Uniform

---

13. *See generally*, I Gilmore, *Security Interests in Personal Property* § 15.3 (1965).

14. *See, e. g., In re Platt*, 257 F.Supp. 478 (E.D. Pa.1966); *In re Kann*, 6 UCC Rep. 622 (Ref.E. D.Pa.1969); *In re Simpson*, 4 UCC Rep. 250 (Ref.W.D.Mich.1966); *In re Bengston*, 3 UCC Rep. 283 (Ref.D.Conn.1965).

15. *See, e. g.*, Me.Rev.Stat.Ann. tit. 11 § 9–403(1); *id.* § 9–402(2)(d) (Supp.1979–80).

16. *See, e. g., id.*

17. *See id.* tit. 13–A §§ 106, 301–303, 403(1)(A), 802(2)(A), 807(1) & (3), 808(1) (1973 pamph.).

18. *See id.* § 106(1)(A) & (D); *id.* tit. 11 § 9–403(4).

19. *See id.* § 9–401(1)(a) (Supp.1979–80) & § 9–403(4).

20. *See* note 3 *supra*.

Commercial Code section 1–203.[21]  *See In re Kalamazoo Steel Process, Inc.,* 503 F.2d 1218 (6th Cir. 1974). The debtor in possession is unable to point to any contractual or statutory duty incumbent upon the MGA as a result of the name change. The court has been unable to discover any authority directly supporting the position urged by the debtor in possession. The name change was neither contemplated nor accomplished prior to the filing of the original financing statements by MGA. At that time the Maine Uniform Commercial Code was silent as to any requirement that a filed financing statement be amended to reflect a change of the name of the debtor. *See In re Pasco Sales Co., Inc.,* 77 Misc.2d 724, 354 N.Y.S.2d 402, 14 UCC Rep. 1059 (Sup.Ct.N.Y.Cty. 1974). Later, the Maine Legislature rejected model UCC § 9–402(7) which required a new financing statement to be filed within four months of a change of name in order to perfect a security interest in collateral acquired following the four-month refiling period. Instead, the Maine Legislature enacted section 9–402(2)(d),[22] expressly relieving secured parties of any obligation to refile in such circumstances.

The court is satisfied that the better course would be to require refiling or, at least, to coordinate the corporate name-change and the financing-statement provisions of the Maine Revised Statutes, with a view to preserving meaningful notice opportunity under the Code filing system. But the court cannot engraft a refiling requirement of its own making without legislative license. *See In re Carlstrom,* 3 UCC Rep. 766, 770 (Ref.D.Me.1966). The resultant serious defect in the Code filing system can be corrected, if at all, only through legislative action.

Accordingly, the financing statements filed by the MGA are determined to have been sufficient to perfect its security interest as of the date of the commencement of the Chapter XI proceedings.

**21.** "Every contract or duty within the Title [11] imposes an obligation of good faith in its performance or enforcement." Me.Rev.Stat.Ann. tit. 11 § 1–203.

**22.** Me.Rev.Stat.Ann. tit. 11 § 9–402(2)(d) (Supp.1979–80). *See In re Pasco Sales Co., Inc.,* 77 Misc.2d 724, 354 N.Y.S.2d 402, 14 UCC Rep. 1059 (Sup.Ct.N.Y.Cty.1974).