**Theodore O. RYAN, Trustee-Appellant,**

v.

**John C. ROLLAND, Claimant-Appellee.**

**No. 268-69.**

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1970.

Anthony F. Avallone, Las Cruces, N. M., for trustee-appellant.

Ray O. Sage, Las Cruces, N. M. (Darden, Mechem & Sage, Las Cruces, N. M., on the brief) for claimant-appellee.

Before PHILLIPS, HILL and HICKEY,* Circuit Judges.

PHILLIPS, Circuit Judge.

On May 13, 1968, Corporation I and its subsidiaries, Rolland Drug, Inc.,[1] and Security Drug, Inc., were adjudicated bankrupts [2] on an involuntary petition in bankruptcy filed by three creditors of such corporations.

John C. Rolland [3] filed a proof of a secured claim belonging to him in the bankruptcy proceeding. The trustee filed objections thereto. The referee in bankruptcy overruled the objections and allowed the claim. On a petition to review, the United States District Court for the District of New Mexico, by its order affirmed the order of the referee. The trustee has appealed from such order of affirmance.

■ The findings of fact made by the referee and confirmed by the District Court are supported by substantial evidence, and upon a careful consideration of the record as a whole, we conclude that such findings are not clearly erroneous.[4] Such evidence and the findings reflect the following facts:

Rolland organized, under the laws of New Mexico, Rolland's Drug Company, Inc., and was the president and principal stockholder thereof. It is not the bankrupt corporation of the same name referred to in the first paragraph of this opinion, and to avoid confusion it will hereinafter be referred to as Rolland's Corporation. The name of Rolland's Corporation was later changed to John Rolland Investment Company.[5]

Rolland's Corporation operated a drug store at Alamogordo, New Mexico, and employed Rufus W. Zimmerle and Charleen M. Zimmerle his wife, as pharmacists. On January 15, 1965, a written agreement was entered into between Rolland's Corporation and the Zimmerles, by which Rolland's Corporation gave them an exclusive option to buy, on or before January 1, 1970, the drug store, including the lease of the premises on which it was operated, its "stock in trade, and the furniture and fixtures at the inventory book value of said property as shown on the books of the Corporation in the fiscal year preceding the time when the Purchasers notify the Corporation in writing of their intention to exercise this option."

While the option agreement provided that the Zimmerles might assign it to a corporation owned or controlled by them, the agreement was never so as-

* Judge Hickey, because of his death on September 22, 1970, did not participate in this opinion.

1. It was organized by Rufus W. Zimmerle and Charleen M. Zimmerle, and is hereinafter referred to as Zimmerles' Corporation.

2. Each of the bankrupts were corporations organized under the laws of New Mexico.

3. Hereinafter called Rolland.

4. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., applies in petitions to review bankruptcy proceedings. In re United Wholesalers, Inc., 7 Cir., 274 F.2d 316, 319; In re Tyne, 7 Cir., 234 F.2d 907, 910; Gross v. Fidelity & Deposit Company of Maryland, 8 Cir., 302 F.2d 338, 339; Bankruptcy Gen.Order 36, 28 U.S.C.A.

5. Hereinafter called the Investment Company.

signed, and was exercised by the Zimmerles individually.

The transaction was closed on January 31, 1966. On that date Rolland's Corporation executed and delivered to the Zimmerles a bill of sale transferring to them "all of the furniture, fixtures, and inventory currently located in the business commonly known as Rolland Drug Stores, Food Mart Shopping Center, 1304 Tenth Street, Alamogordo, New Mexico, as the same may be, and appear, as of the 1st day of February, 1966; including the right to use the business trade name known as Rolland Drug on and after said 1st day of February, 1966." It also executed and delivered an assignment of the lease to the Zimmerles.

The purchase price amounted to approximately $97,000. It was paid by the surrender by the Zimmerles of 1,050 shares of stock in Rolland's Corporation, and the execution by the Zimmerles of a promissory note in the amount of $82,868.60, payable to Rolland's Corporation in monthly installments of $1,000 each, with accrued interest. The first installment was payable on March 1, 1966, and the remaining installments, with accrued interest, on the first day of each succeeding month thereafter. The note provided that the failure to pay any installment of principal or interest, as provided therein, should operate to mature all remaining unpaid installments, and that the same should be due and payable without notice of the default by the holders of the note.

On January 31, 1966, the Zimmerles executed and delivered to Rolland's Corporation a security agreement by which they granted it, as security for the payment of such note, all the "inventory, present and future, including attachments and accessories, fixtures and equipment, used in the operation of the Drug Store located at 1304 Tenth Street, Alamogordo, New Mexico, * * * until full payment of the sum of $82,868.60, * * * evidenced by" the promissory note, according to the tenor thereof. The note was fully described in the security agreement.

The security agreement had attached thereto Exhibit "A", which was made a part of the agreement, and contained a detailed description of the collateral covered by the security agreement. It was signed both by the Zimmerles and by Rolland's Corporation and was duly acknowledged before a notary public.

It provided that no transfer or assignment thereof or of any interest therein would release the debtor from the obligations secured thereunder, and that the "Debtor (the Zimmerles) warrants that the inventory to be maintained by them will have a wholesale value of not less than $60,800.00 during the term of" the agreement.

The security agreement was duly filed on January 31, 1966, in the office of the County Clerk of Otero County, New Mexico, the county in which the drug store and the property covered by such agreement were located.

The Investment Company was dissolved in February 1967, and Rolland received as part of the distribution of the assets of such company the promissory note and security agreement.

At the time of the closing of the sale of the drug store to the Zimmerles, George E. Fettinger and Daniel R. Brenton were members of the Bar of the Supreme Court of the State of New Mexico. At the time of such closing, they occupied offices "side by side" in a building in Alamogordo, New Mexico, but were not partners and practiced law as individuals.

Fettinger, as attorney for the Zimmerles, performed for the most part the drafting of the assignment of lease, bill of sale, promissory note and security agreement, but in so doing he consulted with Brenton, who represented Rolland's Corporation and Rolland. Fettinger was paid for the services which he rendered in drafting the documents and closing the sale by the Zimmerles, and Brenton was paid for the services which he rendered in such matters by Rolland's Corporation.

On January 26, 1966, Fettinger organized Zimmerles' Corporation. The amount of its capitalization was $2,000, evidenced by 20 shares of capital stock, of which the Zimmerles owned 19 shares.

During the preparation and the execution of the assignment, bill of sale, note, and security agreement, and the closing of the sale to the Zimmerles, neither Zimmerles' Corporation nor its formation were at any time discussed or referred to in the presence of Rolland. They were only discussed privately between the Zimmerles and Fettinger, as attorney and clients.

The Zimmerles never executed a bill of sale or other instrument transferring the property purchased from Rolland's Corporation to Zimmerles' Corporation. The Zimmerles never asked permission from Rolland or Rolland's Corporation to transfer the property covered by the security agreement to Zimmerles' Corporation, and neither Rolland nor Rolland's Corporation at any time consented to any such transfer.

There were minutes of a purported special meeting of the Board of Directors of Rolland Drug, Inc., dated January 30, 1966, prepared by Fettinger, which recited that Rolland Drug, Inc., assumed and agreed to pay the indebtedness evidenced by the promissory note to Rolland's Corporation, and that "said assumption of obligations is made in consideration of the said R. W. Zimmerle and Charleen M. Zimmerle, his wife selling to the corporation" the properties covered by the bill of sale and the security agreement.

Fettinger testified that such minutes were actually prepared and signed perhaps as much as a month after January 30, 1966, to prevent a hiatus for income tax purposes and avoid the necessity of one tax return by the Zimmerles and another by the corporation. Fettinger further testified that Zimmerles' Corporation was organized by the Zimmerles because they were advised by their accountant that it would be desirable so to do for income tax purposes.

Rolland first learned of the existence of Zimmerles' Corporation about April 1, 1966, when he received a check drawn on the account of such corporation in payment of the installment due on the promissory note on April 1, 1966.

The Zimmerles at no time gave any notice to Rolland's Corporation of any transfer of the property covered by the security agreement to Zimmerles' Corporation, and neither Rolland nor Rolland's Corporation at any time authorized the Zimmerles to transfer the property covered by the security agreement to Zimmerles' Corporation.

The referee found that there was a balance due and owing on the promissory note to Rolland of $64,863.52, plus interest thereon at five per cent per annum from April 1, 1968, and attorney's fees provided for in the note of $2,000; and that there were no setoffs or counterclaims to such indebtedness.

The trustee requested the referee to find that the Zimmerles transferred the property covered by the security agreement to Zimmerles' Corporation in exchange for stock in such corporation. The referee refused to so find, and the record fully supports such finding. If the corporate minutes above referred to can be considered as a transfer of such property, as between the Zimmerles and Zimmerles' Corporation, the recited consideration was not capital stock, but the assumption of the indebtedness due by the Zimmerles to Rolland's Corporation.

Zimmerle resigned as vice-president and director of Rolland's Corporation on January 31, 1966, and surrendered all of his stock in Rolland's Corporation on January 31, 1966. Hence, any knowedge of Zimmerle of the minutes of Zimmerles' Corporation, referred to above, or of a transfer, if any there was, of the property covered by the security agreement to it could not be imputed to Rolland or Rolland's Corporation.

Since, in the drafting of the lease assignment, the promissory note, the security agreement, the organization of Zimmerles' Corporation, and the draft-

ing of the minutes of Zimmerles' Corporation, referred to above, Fettinger acted as attorney for the Zimmerles and not for Rolland or Rolland's Corporation, any knowledge of Fettinger with respect to the organization of Zimmerles' Corporation and the preparation of the minutes of such corporation, referred to above, could not be imputed either to Rolland or Rolland's Corporation.

The Uniform Commercial Code was enacted in New Mexico in 1961, §§ 50A-1-101 to 50A-9-507, inclusive, N.M.S.A. 1953.

On January 31, 1966, Rolland's Corporation duly filed a copy of the security agreement with the County Clerk of Otero County, New Mexico. The security agreement fully met the requirements of a financing statement, as prescribed by § 50A-9-402, N.M.S.A.1953, which is set forth in marginal note 6,[6] and the filing of a copy of the security agreement was a sufficient filing of a financing statement under the provisions of that section.

Section 50A-9-311, N.M.S.A.1953, in part here pertinent, provides:

"The debtor's rights in collateral may be voluntarily * * * transferred (by way of sale, * * *) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

Hence, the Zimmerles could have transferred the property covered by the security agreement without notifying Rolland or Rolland's Corporation, or securing his or its consent to such a transfer.

Section 50A-9-306(2), N.M.S.A.1953, in part here pertinent, provides:

"(2) * * * a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party * * *."

Neither Rolland nor Rolland's Corporation had any notice or knowledge of a transfer of the property covered by the security agreement by the Zimmerles to Zimmerles' Corporation, if any such transfer occurred, and none did, unless the minutes of Zimmerles' Corporation, above set out, amounted to a transfer. Neither Rolland nor Rolland's Corporation had any notice or knowledge of such minutes, and neither of them authorized a transfer of the property covered by the security agreement to Zimmerles' Corporation.

Under the facts and circumstances presented in the instant case, it clearly was not necessary for Rolland or Rolland's Corporation to file a new financing statement, showing the transferee as a new debtor, to preserve their lien under the security agreement.

We conclude, therefore, that the allowance of Rolland's secured claim was proper, and accordingly affirm.

6. *"50A-9-402. Formal requisites of financing statement—Amendments.*—(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties."