[Civ. No. 32684. First Dist., Div. Four. Dec. 26, 1973.]

BORG-WARNER ACCEPTANCE CORPORATION,
Plaintiff and Appellant, v.
BANK OF MARIN, Defendant and Respondent.

## COUNSEL

J. Warren Manuel for Plaintiff and Appellant.

Arthur M. Lebow for Defendant and Respondent.

## OPINION

**DEVINE, P. J.**—The lawsuit which produces this appeal is a contest between two institutions which financed a retail boat dealer. Defendant bank is charged by plaintiff with conversion of collateral in which plaintiff had a security interest. Damages in the sum of $9,881.74 are alleged to have resulted. Trial was without a jury. Judgment was rendered for defendant bank, the trial judge having decided that the bank's security interest had been perfected prior to that of plaintiff. Plaintiff appeals.

Commencing in May 1967, the Bank of Marin entered into written security agreements with two partners, Gary and William Muggenthaler, doing business as Loch Lomond Boat Shop and Loch Lomond Yacht Sales (hereafter "the dealer"). On May 9, 1967, the bank filed with the Secretary of State of the State of California a financing statement (UCC-1) covering "all inventory, including but not limited to boats, motors, boat trailers and accessories whether now owned or hereafter acquired." The UCC-1 filing showed the individual Muggenthalers as debtors and listed as a trade name in the appropriate section of the form "Loch Lomond Boat Shop and Loch Lomond Yacht Sales."

Approximately one year later, on June 13, 1968, the dealer incorporated its business as Loch Lomond Yacht Sales, Inc. The bank continued to finance the inventory for the new corporation. Although there is no specific finding on the subject, it appears to be undisputed that the bank knew of the incorporation. On November 14, 1969, Borg-Warner Acceptance Corporation, a finance company, agreed to finance certain inventory of the dealer, and on December 19, 1969, filed a UCC-1 financing statement naming "Loch Lomond Yacht Sales, *Inc.*" (italics added) as the debtor.

Default occurred as to contracts with both of the financing institutions. The debt to the bank far exceeded the amount of the value of the inventory of the dealer which the bank took possession of and sold, applying the proceeds toward the obligation. The trial court found and concluded that the bank perfected its security interest in the dealer's inventory on May 9, 1967, when it filed its first UCC-1. Borg-Warner perfected its security interest when it filed its UCC-1 on December 19, 1969. Under the "first to file" rule, the bank had priority, and plaintiff was put on notice of the bank's prior security interest. The failure to list "Loch Lomond Yacht Sales, Inc." was not seriously misleading to plaintiff.

Conflicting security interests in the same collateral (in cases not governed by other rules, which are not relevant here) are determined in the order of filing, if both are perfected by filing. (Cal. U. Com. Code,* § 9312, subd. (5)(a).)

It is our judgment that the trial court was correct in holding that the bank's security interest is entitled to priority. Although the code provides that the original UCC-1 may be amended by a statement signed by the security party of record and the debtor (§ 9402, subd. (4)) and this was not done, the provision is permissive by its terms and not mandatory. A new statement could have been filed, but the statute does not state that such action is necessary. On the positive side in favor of the bank, there is the provision that a filed financing statement is effective for five years from the date of filing (§ 9403, subd. (2)), and no exception to the continuing effectiveness of the statement is expressed in the statutes. Besides, there is to be considered the purpose of filing a financing statement, which is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or prospective debtor has encumbered his assets and to govern himself ac-

---

*Unless otherwise noted, all statutory references are to the California Uniform Commercial Code.

cordingly in dealing with the debtor. (*Needle* v. *Lasco Industries, Inc.,* 10 Cal.App.3d 1105, 1107 [89 Cal.Rptr. 593].)

The question, therefore, is whether plaintiff as a prospective creditor had an opportunity to inform itself of the earlier security interest. The trial judge found that: "Based on the presumption that public officers have performed their duty, it is found that it is a standard practice of the Office of the Secretary of State of the State of California, and particularly of its Uniform Commerical Code Division, to index financing statements filed under the Uniform Commercial Code under every name appearing in such financing statements, and under all additional debtors and all trade styles."

The judge's reference to the presumption of performance of duty derives from two sections of the California Uniform Commercial Code. Section 9403, subdivision (4)(a), provides that the filing officer "shall index the statement according to the name of the debtor"; and section 9402, subdivision (1), requires that the "financing statement shall also set forth . . . if the debtor is doing business under a trade name or style, such trade name or style." Although the latter section does not expressly require that the filing officer shall index the statement under a trade name or style as well as that of the debtor's own name, the Legislature impliedly imposes the duty of double indexing upon the filing officer, else a demand made upon the filing creditor under section 9402, subdivision (1) would be meaningless. As a matter of fact, the State of California does have a dual indexing system, so that a trade name or style may be discovered. (Cal. Commercial Law: III (Cont.Ed.Bar 1966) §§ 5.9, 5.80.)

Appellant's argument that if the Secretary of State indexes in the debtor's trade name it is a voluntary act and of no legal consequence, must be rejected because of the language of section 9402, subdivision (1), as interpreted in the light of common sense and as it has in fact been carried out by the Secretary of State. That a standard search would have disclosed the bank's financing statement appears first, from the practice of the Secretary of State and second, from the fact that a particular search requested by the bank, the results of which were presented in evidence, accomplished this disclosure. To be sure, a particular search is not conclusive. It might be "tainted by prior investigation" following the beginning of litigation, as noted in *John Deere Co.* v. *William C. Pahl Construction Co.,* 34 App.Div.2d 85 [310 N.Y.S.2d 945, 949]. But the particular search does serve as prima facie evidence of what a standard search would reveal. There is no evidence or offer of evidence that there was any taint or that anyone in the office of the Secretary of State had

been urged to exert extraordinary effort in order to produce a favorable result. Indeed, since the system is worked by computer, it may be doubted, at least in the absence of evidence, that such an effort would be fruitful.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.