**In re Cynthia K. McBEE d/b/a Oak Hill Gun Shop, Debtor.**

**Bankruptcy No. 1–80–00383.**

United States Bankruptcy Court,
W. D. Texas,
Austin Division.

May 12, 1982.

William F. Turman, and James Chrisman Phillips, Austin, Tex., for debtor.

Vince Taylor Austin, Tex., trustee.

William H. Daniel, McGinnis, Lochridge & Kilgore, Austin, Tex., for Republic Bank of Austin (Formerly Known as the Texas State Bank).

Don L. Baker, Austin, Tex., for West Texas Wholesale Supply Co.

B. Weldon Ponder, Jr., Coffee, Goldston & Vogt, Austin, Tex., for National Bank of Texas.

AMENDED OPINION AND ORDER

JOSEPH C. ELLIOTT, Bankruptcy Judge.

A Petition for Relief under Chapter 11 of the United States Bankruptcy Code was

filed by Cynthia K. McBee on October 22, 1980. Thereafter, on January 15, 1981, this Court entered its Order appointing a Trustee and ordered the Trustee to hold a public auction of the assets of Oak Hill Gun Shop and place the proceeds of the sale in escrow. This adversary proceeding was commenced on the objections of Texas State Bank (hereinafter referred to as State Bank) to the motions for distribution of auction proceeds filed by National Bank of Texas (hereinafter referred to as National Bank) and West Texas Wholesale Supply Co. (hereinafter referred to as Wholesale Supply). The subject matter of this adversary is the conflicting priority claims to the fund created by the Trustee's sale. Furthermore, during the course of this Opinion it shall become necessary to consider matters of first impression within the body of Texas case law concerning Articles 6 and 9 of the Texas Business & Commerce Code.

On January 8, 1979, the claimant, National Bank, then operating as Union National Bank, filed a UCC–1 financing statement with the Secretary of State of the State of Texas naming Oak Hill Gun Shop as Debtor, but signed by Cynthia McBee, as partner. The financing statement purported to collateralize all inventory of the Debtor. A subsequent Creditor, Wholesale Supply, an inventory supplier, extended goods on credit and filed a financing statement April 22, 1980, specifying "Joe B. Colley d/b/a Oak Hill Gun Shop" as Debtor. The financing statement, signed by Joe B. Colley, covered all inventory, proceeds and accounts receivables and also all equipment, furniture and fixtures used in the Debtor's place of business. On May 5, 1980, Colley assigned his interest in the Oak Hill Gun Shop to Cynthia K. McBee. Thereafter, a third lender, State Bank, filed a financing statement on July 16, 1980, covering "(a) all accounts, contract rights . . . [i]nventory . . . whether now owned or hereafter acquired."[1]

## I.

■ Plaintiff, State Bank, asserts National Bank and Wholesale Supply, Defendants, failed to perfect their security interests in that their respective UCC–1 filings failed to conform to the requirements of Section 9.402 of the Texas Business and Commerce Code. The UCC–1 financing statement filed by National Bank specified Oak Hill Gun Shop as the Debtor. Section 9.402(g) provides that "[a] financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners." Tex.Bus. & Comm. Code Ann., § 9.402(g) (Tex. UCC) (Vernon Supp. 1980–1981). The official comment to Section 9.402 addresses the issue as to who is the Debtor required to be identified in the financing statement. Id. The comment stresses that when an individual is the debtor, "(the Code)" contemplates filing only in the individual name, not in a trade name." Id. The reason advanced for the requirement is that trade names do not lend themselves to the certainty of notice essential for an effective filing system. Id. The use of trade names for filing purposes is considered "seriously misleading" as to creditors attempting to ascertain the status of a debtor with respect to any prior creditors. See e.g., In Re Leichter, 471 F.2d 785, 787–88 (2d Cir. 1972); In Re Thomas, 466 F.2d 51, 52 (9th Cir. 1972). Filing under a trade name is insufficient to perfect a security interest and will fail to protect against subsequent perfected security interests. In Re Leichter, 471 F.2d 785–788 (2nd Cir. 1972).

■ Defendant, National Bank, asserts the conduct of Joe Ben Colley and Cynthia K. McBee in reference to their dealings with the bank amounted to a partnership by estoppel and that, therefore, the filing of the financing statement in the name of Oak Hill Gun Shop, as debtor, is in conformance with Section 9.402(g). As the trier of fact, the Court finds the evidence produced on

1. All three claimants executed security instruments covering after-acquired property. *Borg-Warner Acceptance Corp. v. Wolfe City National Bank*, 544 S.W.2d 947, 950 (Tex.Civ.App. —Dallas, 1976).

this point fails to preponderate in favor of the defendant bank and in failing to sustain its burden, the Court holds that National Bank failed to perfect its security interest.

■ The financing statement filed by Wholesale Supply, identifying "Joe Ben Colley d/b/a Oak Hill Gun Shop" as debtor is a valid filing sufficient to perfect the company's security interest. A financing statement filed in the name of the individual debtor, but along with a trade name, is an effective filing under the Code. Tex. Bus. & Comm.Code Ann., § 9.402(g) (Tex. UCC) (Vernon Supp. 1980–1981). Indeed, the addition of a trade name after the actual name of the debtor is surplusage and does not affect the validity of the filing. *In Re Skinner*, 22 UCCR 1286, 1291 (W.D.Mich. 1977).

As to Wholesale Supply, which named "Joe Ben Colley d/b/a Oak Hill Gun Shop" as debtor, State Bank contends a filing in the name of Joe Ben Colley does not create a security interest effective against Cynthia K. McBee, the transferee of Colley and the debtor in this case, nor effective as against her secured creditor, State Bank. These contentions and the facts of this case raise issues concerning Articles 6 & 9, which this Court must address before consideration of the priority question.

## II.

The record and evidence presented to this Court shows that on May 5, 1980 Joe Ben Colley assigned all of his interest in the inventory, furniture, fixtures and other stock in trade of the Oak Hill Gun Shop to Cynthia K. McBee. The document evidencing the assignment, which was submitted by the defendants and admitted into evidence, provided that Cynthia K. McBee would comply with the Bulk Sales provisions of Article 6 of the Texas Business and Commerce Code. Although the Defendant, Wholesale Supply, did not specifically allege McBee's failure to comply with Article 6, they did assert, by their pleadings and briefs, that the transfer was without their consent and knowledge. State Bank's briefs and pleadings fail to allege compli-

ance with the Bulk Sales provisions of Article 6. Notwithstanding the litigants' failure to specifically raise the issue, the Court is of the opinion that Article 6 is applicable to the facts and a consideration of its provisions is a necessary preface to the proper resolution of the priority claims under Article 9.

■ A threshold issue this Court feels compelled to address, but without the aid of Texas authority, which is absent, is whether it was seriously misleading for Wholesale Supply not to refile a financing statement within four months following the sale or assignment of the Oak Hill Gun Shop to Cynthia K. McBee. Tex.Bus. & Comm.Code Ann., § 9.402(g) (Tex. UCC) (Vernon Supp. 1980–1981). The second sentence of Section 9.402(g), which is relevant to the issue, provides "[w]here the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time." *Id.* Since a comparable provision was lacking in the 1962 version of the Code, the case law leading up to the 1972 revision was in conflict as to the duty of the secured party to refile. *Compare Continental Oil Co. v. Citizen's Trust & Savings Bank*, 397 Mich. 203, 244 N.W.2d 243 (1976) (no duty) *and In Re Gac*, 11 UCC Rep. 412 (WD Mich.1972) (no duty) *with In Re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir. 1974) (in applying Michigan law, imposed a duty) *and King v. Williams (In re Conger Printing Co., Inc.)* 18 UCC Rep. 224 (D.C.Ore.1975) (duty to refile).

The leading cases which found that the creditor had a duty to refile based their holdings primarily upon the fact that the secured party in each case had knowledge of an intended name change or was visited with actual knowledge subsequent to the change and, therefore, was bound by the good faith obligation of Section 1.203 to

refile. *See In re Kalamazoo Steel Process, Inc.,* 503 F.2d 1218, 1222 (6th Cir. 1974); *King v. Williams (In re Conger Printing Co., Inc.)* 18 UCC Rep. 224, 230 (D.C.Ore. 1975). Under the approach adopted by this line of authority, failure to refile results in the creditor becoming unperfected as against subsequent creditors.

Those cases which construed the 1962 Code as not imposing a duty on the secured party to refile have reached that conclusion primarily out of their refusal to impose court-established rules upon areas where the Code is silent. *See Continental Oil Co. v. Citizens Trust & Savings Bank,* 397 Mich. 203, 244 N.W.2d 243 (1976); *Borg-Warner Acceptance Corp. v. Bank of Marin,* 36 Cal. App.3d 286, 111 Cal.Rptr. 361 (Ct.App.1973).

Finally, there is persuasive authority which holds, when the name change results from a sale or transfer of collateral without the knowledge of the secured party, § 9–306(2)[2] applies and the perfected security interest remains unaffected. *Ryan v. Rolland,* 434 F.2d 353 (10th Cir. 1970); *Fliegel v. Associates Capital Co.,* 272 Or. 434, 537 P.2d 1144 (1975); *Inter Mountain Assoc. of Credit Man. v. Villager, Inc.,* 527 P.2d 664 (Utah 1974). The Court of Appeals for the Tenth Circuit held Section 50A–9.306(2), New Mexico Statutes Annotated, was controlling and a refiling unnecessary when the debtor transferred property covered by a security agreement to a corporation without the knowledge or consent of the secured creditor. *Ryan v. Rolland,* 434 F.2d 353, 357 (10th Cir. 1970). Although the 1972 Revision had not become effective in Oregon until after the events under consideration, the Oregon Supreme Court in *Fliegel v. Associates Capital Co.,* 272 Or. 434, 537 P.2d 1144 (1975), citing *Ryan,* intimated that, notwithstanding the adoption of Section 9–402(7) of the 1972 Revision, Section 9–306(2)

applied when a partnership debtor transferred its inventory to a corporation, and a refiling was not required to continue the security interest in inventory subsequently acquired by the corporation.

A case similar for its facts to that presently before this Court, *In Re Taylorville Eisner Agency,* 445 F.Supp. 665 (S.D.Ill. 1977), in applying Section 9–402(7) of the 1972 revision, held the third sentence of Section 9–402(7) applies in cases involving a transfer of secured collateral by the debtor rather than the second sentence which the Court found is limited to voluntary name changes by the debtor. *Id.* at 668–69. The third sentence of Section 9–402(7) provides that "[a] filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." Tex.Bus. & Comm.Code Ann., § 9.402(g) (Tex. UCC) (Vernon Supp. 1980–1981). The Court reasoned that each sentence is intended to address a specific, yet exclusive, problem. Furthermore, in finding the third sentence controlling, the Court held that the filed financing statement remains effective "with respect to collateral transferred by the debtor ..." and "... collateral which is after-acquired property." *Id.* at 669. The Court found prospective creditors have a duty to inquire as to the source of title if circumstances dictate. *Id.* at 669.

A point of analysis which this Court finds to be a most compelling argument against the applicability of the second sentence of Section 9.402(g) in circumstances of sale or transfer of collateral is the negative effect an overly broad application would have on the protection afforded by Article 6. Under Article 6, Section 6.111, any claim a transferor's creditor may have following a non-complying bulk transfer must be as-

---

**2.** Section 9–306(2) provides that "[e]xcept where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." Tex.Bus. & Comm.Code Ann., § 9.306(b) (Tex. UCC) (VERNON SUPP. 1980–1981). In *Fisher v. First National Bank of Memphis,* 584 S.W.2d 515, 518 (Tex.Civ.App.— Amarillo 1979, no writ), the Court held Section 9.306(b) protected a bank's lien on collateral notwithstanding its sale from a farmer to a third party when the bank had not authorized the sale.

serted within six months of the violation provided there has been no concealment of the transfer. Tex.Bus. & Comm.Code Ann., § 6.111 (Tex. UCC) (Vernon Supp. 1980–1981); *Hurley v. Lano International, Inc.*, 569 S.W.2d 602, 604 (Tex.Civ.App.—Texarkana, 1978, ref. n.r.e.). An interpretation finding the second sentence of Section 9.402(g) controlling in a situation of sale or transfer would run at loggerheads with the limitation section of Article 6 and, in effect, reduce the period from six months to four months. Valid judicial construction of a bare statute does not permit this Court to reach an interpretation in which a vague subsection undermines the established provisions of an entire Article, in this case Article 6. Pursuant to Section 1.102, the refiling provision of Section 9.402(g) should be construed narrowly so as to preclude its application in cases of sale or transfer of collateral and in cases where the provisions of Article 6 are applicable. *See* Tex.Bus. & Comm.Code Ann., § 1.102 (Tex. UCC) (Vernon Supp. 1980–1981). The four month refiling provision of Section 9.402(g) is not applicable when a name change occurs as a result of a non-complying Article 6 bulk transfer, particularly under circumstances as presented to this Court in which the transferee has covenanted to comply with the Bulk sales provisions, but fails to do so. The Court is led to this conclusion in consideration of Section 9–306(2), the third sentence of Section 9.402(g), and the provisions of Article 6, all of which are to the point in their addressing the effects of a transfer of collateral upon a security interest.

### III.

■ Although the bulk sales provisions of Article 6 do not address priority conflicts between a transferor's creditors and transferee's creditors, it appears to this Court, considering the facts of this case and the policies underlying Articles 6 and 9, that a transferor's perfected secured creditors should be protected and preferred over the transferee's non-purchase money secured creditors who appear subsequent to the transfer. Section 6.105 of Article 6 provides that non-compliance with its provi-

sions renders the transfer "ineffective" as to the transferor's creditors. Tex.Bus. & Comm.Code Ann., § 6.105 (Tex. UCC) (Vernon Supp.1968). The meaning of "ineffective" is not defined by Article 6, and Texas law is silent on this point; yet the scope of its usage with reference to the extent a creditor's original interest and rights remain unaffected can be determined by reading Article 6 in conjunction with Article 9.

Article 9, Section 9.201 provides "... a security agreement is effective *according to its terms* between the parties against purchasers of the collateral and against creditors." (Emphasis added) Tex.Bus. & Comm. Code Ann., § 9.201 (Tex. UCC) (Vernon Supp. 1980–1981) When collateral has been transferred from one debtor to another it is not necessary for a new filing by the creditor. Tex.Bus. & Comm.Code Ann., § 9.402(g) and Comment 8 (Tex. UCC) (Vernon Supp. 1980–1981). The policy put forward by Article 9 is one requiring the prospective creditor, in searching the condition of the debtor's ownership, to inquire as to the debtor's source of title by searching in the name of the former owner when circumstances appear to warrant such action. The circumstances of this case warrant such an inquiry. *Id.* The transferee takes collateral subject to prior encumbrances and the security interest continues in effect. *W. W. Montgomery v. Fuquay-Monser Inc.*, 567 S.W.2d 268, 270 (Tex.Civ. App.—Amarillo 1978, no writ). As against the transferee and his secured creditors appearing subsequent to the transfer, the perfected security interest of a transferor's creditor continues in force to the extent of its terms.

The fact a bulk transfer intervenes between the perfection of conflicting security interests should not place them on a different footing regarding the application of Article 9 priority rules unless the subsequent creditor is protected as an innocent purchaser under Section 6.110. Although lien creditors fall within the Code definition of purchasers, they are obligated by Article 9 to refer to the filing system and it is only

when the filing system fails to reveal prior perfected interests that they achieve bona fide purchaser status. Tex.Bus. & Comm. Code Ann., § 9.402(g) and Comment 8 (Tex. UCC) (Vernon Supp. 1980–1981). The Court finds the filing of Wholesale Supply to be in compliance with Code provisions and State Bank is obligated under Article 9 to take notice of its effect.. Indeed, as UCC Commentators Messrs. White and Summers have pointed out, there is less reason to protect a transferee's creditors who have the benefit of a filing system and all the more reason to protect the transferee's bona fide purchasers who, by definition, are unaware of the potential claims of the transferor's creditors. J. White and R. Summers *Uniform Commercial Code* 776 (1980). To hold otherwise under these facts would compromise the certainty the Code filing system attempts to establish and would circumvent the protection accorded a transferor's creditors under Article 6.

### IV.

Having determined that the transfer from Joe B. Colley to Cynthia K. McBee was ineffective as to the security interest of Wholesale Supply, the Court's inquiry has narrowed to a consideration of priority in the fund realized through the Trustee's sale of inventory. The financing statements and security agreements placed in evidence by the opposing parties reveal a conflict in the same collateral, namely accounts receivable and inventory. Such a blanket filing apparently was a calculated attempt at avoiding the accounts versus inventory financing conflict as to proceeds addressed by Code Section 9.312, and several commentators. *See* Tex.Bus. & Comm.Code Ann., § 9.312, and Comment 4 (Tex. UCC) (Vernon Supp. 1980–1981). See, generally, J. White and R. Summers, *Uniform Commercial Code*, 1040–41 (1980); Henson, *"Proceeds" Under the Uniform Commercial Code*, 65 Colum.L.Rev. 232, 239 (1965); Comment, *A Second Look at the Amendments to Article 9 of the Uniform Commercial Code*, 29 Bus.Law 973, 1000–03 (1974) (comments by Professor Homer Kripke, member of Review Committee for Article 9).

The official comment to Section 9.312 stresses the greater importance to the economy of accounts financing over inventory financing and, consequently, the greater need for certainty in the legal position of accounts financing. Tex.Bus. & Comm. Code Ann., § 9.312(e) and Comment 4 (Tex. UCC) (Vernon Supp. 1980–1981). The first-to-file rule of Section 9–312(e), therefore, is offered to achieve legal certainty in that "where a financing statement as to accounts is filed first (with or without related inventory financing), the security interest in accounts should not be defeated by any subsequent claim to accounts as proceeds of a security interest in inventory filed later." *Id.* Subsection 9–312(3) provides, however, protection to a subsequent purchase money security interest in the same collateral and any identifiable cash proceeds. Tex.Bus. & Comm.Code Ann., § 9.312(c) (Tex. UCC) (Vernon Supp. 1980–1981). The protection afforded by this subsection as to inventory and identifiable cash proceeds arises only if the subsequent purchase money security interest has complied with its requirements. *Id.* Two of the requirements—notification in writing to the holder of the prior conflicting security interest and a description of inventory by item or type—have not been shown by State Bank as having been complied with. This finding does not mean that Texas Bank has not perfected a security interest in the cash proceeds of the sale of inventory. The Court finds that by failing to comply with the Section 9–312(3) requirements it cannot prevail under that subsection over Wholesale Supply. The parties, by filing financing statements as to accounts along with related inventory financing, would be perfected as to any accounts or cash produced from the sale of inventory. Such a result apparently cannot be achieved by filing as to inventory or accounts alone, since Section 9.306(a) categorizes accounts as non-cash proceeds and money, checks, and deposit accounts as cash proceeds. *See In Re Cooper*, 2 B.R. 188 (Bkrtcy.1980). Since proceeds from the sale

of inventory may take on either form, the shrewd creditor will collateralize both accounts receivable and inventory.

Both parties have perfected security interests under Section 9.306(c) and (d)(2) and Section 9.312(f) in the cash fund created by the Trustee's Sale. The tracing formula of Section 9.306(d)(4) is not applicable to the facts before the Court because the trustee's fund represents identified cash proceeds which are "neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings". Tex. Bus. & Comm.Code Ann., § 9.306(d)(2) (Tex. UCC) (Vernon Supp. 1980–1981). Therefore, reliance by the parties on Section 9.306 as determinative of the priority dispute is misplaced. Section 9.306 is essentially a perfection statute and not a priority statute. *Compare Id.* § 9.306 *with* § 9.312. See Generally, J. White and R. Summers, *Uniform Commercial Code*, 1040, 1041 N. 19 (1980) (although the authors refer to the 1962 Code, a comparison of the 1972 Code also lends support to this view). The foregoing analysis establishes that the opposing security interests are perfected in the same collateral and proceeds. The issue before the Court at this juncture is to determine which perfected security interest has priority. Accordingly, Section 9.312(3) governs the priority dispute and not Section 9.306 as asserted in the briefs of counsel.

Section 9.312(c) provides in pertinent part that "priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(1) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter, when there is filing nor perfection." Tex.Bus. & Comm. Code Ann., § 9.312(e)(1) (Tex. UCC) (Vernon Supp. 1980–1981).

Section 6 of Section 9.312 states that "[f]or the purposes of Subsection 5 a date of filing or perfection as to collateral is also a date of filing or perfection as to proceeds." *Id.* Section 9.312(6). Wholesale Supply filed its financing statement on April 22, 1980 and thereby perfected its security interest. The financing statement which perfected State Bank's security interest was not filed until July 16, 1980. Therefore, the Court finds and orders, pursuant to Sections 9.312(5) and (6), that Wholesale Supply has a prior right to the fund created by the Trustee's Sale and, consequently, shall satisfy its claim prior to State Bank, which shall have priority in the balance.

It is, therefore, ORDERED, ADJUDGED AND DECREED:

That claimant, National Bank of Texas, has an unperfected security interest and is, therefore, a general creditor of the Debtor.

That claimant, West Texas Wholesale Supply Co., has a prior perfected security interest and, therefore, a prior right to the fund created by the Trustee's Sale and, consequently, shall satisfy its claim prior to the claimant, Texas State Bank, which shall have priority in the balance.

That the parties shall bear their own costs and attorney's fees.