**HATFIELDS & McCOYS, INC. et al., Plaintiff,**

v.

**FIRST TAMPA CAPITAL CORP. & Mid-State Federal Savings & Loan Association, Defendants.**

**Bankruptcy No. 86–9152.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

Sept. 30, 1987.

**MEMORANDUM OPINION AND ORDER**

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on cross Motions for Summary Judgment filed by the debtor, Hatfields & McCoys, Inc., the plaintiff herein, and Mid-State Federal Savings & Loan Association (Mid-State). The parties agree that there is no dispute as to the facts concerning the transactions between them. The only issue to be resolved by the Court is that: where Mid-State had a perfected security interest in certain restaurant equipment owned individually by the president of the debtor corporation and where said equipment was transferred pre-petition to the debtor without notice to or the authorization of Mid-State, was Mid-State required to refile its refinancing statement to continue its perfected lien as against the debtor-in possession exercising the powers of a trustee under 11 USC § 544? The Court concludes based on the following facts and conclusions of law that Mid-State did not have to refile and that its security interest in its

collateral now owned by Hatfields and McCoys is fully perfected.

On October 3, 1985, Jarrell E. Walker, the debtor's president and principal stockholder, executed a note for $58,666.05 and security agreement giving Mid-State a security interest in certain restaurant equipment which he owned individually. Mid-State filed its financing statement on October 8, 1985, naming Walker as the debtor. Walker had entered into a lease agreement with the debtor for the equipment on October 1, 1985.

Walker transferred the equipment to the debtor on March 31, 1986, for the assumption of the debt to Mid-State all without Mid-State's knowledge or consent. The restaurant was thereafter closed on May 18, 1986. The debtor's purchase of the collateral and the assumption of the debt to Mid-State were subsequently authorized at a board of directors' meeting on May 27, 1986, at which time the directors also authorized the corporation to file a Chapter 11 petition. The debtor's attorney, Lansing J. Roy, was present at that meeting.

The debtor's petition was filed on June 4, 1986. Mid-State was without knowledge of the transfer of its collateral until receipt of the following letter dated June 5, 1986:

Ms. Debbie Zanetti
Mid-State Federal Savings & Loan Assn.
P.O. Box 280
Ocala, FL 32678
Dear Ms. Zanetti:
Please be advised that the restaurant equipment securing that certain loan made by Jerrel E. Walker in favor of your bank has been sold to, and the loan assumed by, Hatfields & McCoys, Inc. as per the enclosed Bill of Sale.

The equipment is located at 10251 Seminole Blvd., Seminole, Florida 33542 which is the Company's restaurant operation at that location. This particular restaurant operation was closed by the Company May 18, 1986, and the real estate, on which your bank also has a mortgage loan is presently being offered for sale. Further, Hatfields & McCoys, Inc. filed a petition for a Reorganization under Chapter 11 of Title 11, United States Code on June 4, 1986 (Case No. 86–00089). I and/or our attorney, Mr. Lansing J. Roy, will, of course, be discussing the matter further with you in the near future.

Yours very truly,
Jerrel E. Walker
President

Section 679.402(1), Fla.Stat. (1985) provides in part that, "A financing statement is sufficient if it gives the names of the debtor...." Mid-State's financing statement included the correct name of the debtor at the time it was filed in October, 1985. The debtor-in-possession asserts, however, that, upon the transfer of the collateral from Walker to Hatfields and McCoys, the perfection of Mid-State's security interest lapsed because the financing statement no longer contained the debtor's correct name. Following the debtor's line of reasoning, Mid-State would have had to immediately refile its financing statement in the name of Hatfields and McCoys in order to continue uninterrupted its perfected security interest. Debtor's counsel agrees with the Court nonetheless that, at the time Mid-State was finally made aware of the unauthorized transfer of its collateral, it was stayed by 11 U.S.C. § 362(a) from taking any action to perfect its security interest.

This case would in all probability not have been filed except for the fact that, when the Florida Legislature adopted Uniform Commercial Code (U.C.C.) § 9–402(7) in 1979 (Fla.Stat. 679.402(6)), it omitted the last sentence. Section 9–402(7) provides that:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing state-

ment is filed before the expiration of that time. *A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.* (emphasis added—the underlined portion does not appear in the Florida Statutes.)

There is no comment or other legislative history to indicate the logic or reason, be there any, for Florida's deviation from the model U.C.C. Further, with exception of *In re S & S Machinery, Inc.,* 54 B.R. 83 (Bkrtcy.M.D.FL.1985) upon which the debtor relies, there is no Florida case law to shed any light on the issue.

In *S & S Machinery, Inc.,* Peoples Bank obtained a security interest in collateral owned by Roberts RST. Peoples Bank filed its financing statement naming Roberts RST as the debtor on November 20, 1978. Roberts RST sold the collateral to S & S in 1980. Thereafter S & S gave a security interest in the collateral to Metropolitan Bank & Trust Company and back to Roberts RST. Their financing statements were filed on June 13, 1980, and August 28, 1980, respectively. The Peoples Bank filed a new financing statement naming S & S as debtor on May 13, 1981. It is not clear whether Peoples Bank had knowledge of the transfer prior to that time. Sometime thereafter S & S filed a Chapter 11 petition.

In the ensuing dispute over the priority of the three liens, the bankruptcy court concluded that, by excluding the last sentence of § 9–402(7), the Florida Legislature:

> ... intended that a filed financing statement should become ineffective upon sale unless there is a new filing because the financing statement fails to name the debtor, as required by Fla.Stat. § 679.402(1). Such an interpretation of the relevant Section is in keeping with Florida's intent to provide a filing system which gives reasonable notice to creditors and other interest [sic] parties that a security interest exists in property of the debtor by maintaining its central indexing system by the name of the debtor. See, *Matter of Glasco Inc.,* C.A.5, 642

F.2d 793 (1981). Under the present facts, the perfected security interest created by the November 20, 1978, filing by Peoples Bank lapsed upon sale of the equipment to S & S Machinery.

*S & S Machinery, Inc.,* at 85. With this interpretation of Fla.Stat. § 679.402(6), the entire risk of a post-filing change in circumstances is placed on the secured party with the drastic consequences of the loss of its collateral even where the creditor has acted in good faith and is without knowledge of the transfer or name change. It virtually opens the door for the unscrupulous debtor to engage in surreptitious bankruptcy planning and thereby divest the secured party of its collateral. Although it is admittedly important in a notice filing system that the financing statement reflect the correct name of the debtor, this Court is convinced that the Florida Legislature did not intend by its omission of the last sentence of U.C.C. § 9–402(7) to saddle the secured creditor with that risk.

Prior to the addition of § 9–402(7) to the U.C.C. in 1972, there was no specific provision dealing with the notice problem created by a post filing change in the debtor's name brought on by a transfer of collateral. Understandably, the question of whether a financing statement filed in the name of the original debtor should remain effective after the transfer was the subject of some confusion. The drafters eliminated much of the problem with the adoption of the third sentence of § 9–402(7). Section 9–402(7) did not, however, change the existing law. Rather, as provided in U.C.C. § 11–108, it was simply a codification of the prevailing view under the old Code. The majority of the cases under the old Code held that a secured creditor did not have to refile its financing statement under the debtor's new name to continue its perfected status. Since the Florida Statutes remain silent as to this issue, the cases decided under the old Code are persuasive.

In *Ryan v. Rolland,* 434 F.2d 353 (10th Cir.1970), the bankruptcy trustee objected to the secured claim filed by John C. Rolland as successor to the interest of Rolland's Corporation. On January 31, 1966, Rolland's Corporation transferred all its as-

sets to the Zimmerles and received in return a note and security interest in the transferred assets. The security agreement was filed on January 31, 1966, naming the Zimmerles as the debtor. The Zimmerles then transferred the assets to Corporation I, a corporation which they had formed a few days earlier. The transfer was without notice to or the knowledge of Rolland's Corporation. An involuntary petition was filed against Corporation I on May 13, 1968. The Court held that: "Under the facts and circumstances presented in the instant case, it clearly was not necessary for Rolland or Rolland's Corporation to file a new financing statement showing the transferee as a new debtor, to preserve their lien under the security agreement. *Ryan* at 357. *Accord, In re Griswold*, 18 B.R. 33 (Bkrtcy.M.D.GA.1982); *In re Environ. Electronic Systems, Inc.*, 2 B.R. 583 (Bkrtcy.N.D.GA.1980); *Matter of Guaranteed Muffler Supply Co., Inc.*, 1 B.R. 324 (Bkrtcy.N.D.GA.1979); *Fliegel v. Associates Capital Co. of Delaware, Inc.*, 537 P.2d 1144 (Ore.1975); But cf., *In re Vieths, Inc.*, 9 U.C.C.Rep.Ser. 943 (Bkrtycy.E.D. Wis.1971), but in this case the creditor had knowledge of and consented to the transfer of collateral.

Thus where, as in the instant case, the creditor has acted in good faith and is without knowledge of the transfer of its collateral and name change of the debtor, the Courts have concluded that the original filing remains effective after the transfer to perfect the interest of the filer over a bankruptcy trustee or the competing interest of subsequent creditors filing under the debtor's new name. We agree with the conclusion reached in those cases. If the Florida Legislature intended to create a new filing requirement, it should have enacted legislation specifically to that effect. In this Court's view, the failure to adopt a model U.C.C. provision in the Florida Statutes should not be construed to create such a requirement where one has never existed or found favor under the U.C.C. *See, Continental Oil v. Citizens Trust & Savings Bank*, 397 Mich. 203, 244 N.W.2d 243 (1976).

The same conclusion may be reached under § 679.402(6) by approaching the issue from another direction. The debtor argues that Mid-State's filed financing statement became ineffective after the transfer of collateral because the debtor's *name* was incorrect. There is no question concerning the continuation of the security interest itself. Section 679.306(2), Florida Statutes, provides for continuation of the security interest. The question is simply whether the originally filed financing statement remains effective to give notice to third parties after a change in the debtor's name, and under what circumstances should a name change trigger a requirement to refile.

Section 679.402(6), Florida Statutes provides that a secured party with a lien on after acquired property must refile under the debtor's new name within four months of a name change if the new name is seriously misleading. Otherwise, perfection of the lien will lapse as to the after acquired property only. Thus a creditor with a lien on collateral existing at the time of the name change or on fixed collateral such as equipment need not refile to protect its interest even though the new name may be seriously misleading. B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 2.11[1] (1980), and Cumm.Supp. # 3 (1985).

Whether the name change is occasioned by a transfer of the collateral or is simply a change of name, the problem it creates in a notice filing system for third party searches is identical; therefore, it should be given identical treatment. *See, In re Kittyhawk Television Corp.*, 516 F.2d 24 (6th Cir.1975). *See also, In re West Coast Food Sales, Inc.*, 637 F.2d 707, 709 (9th Cir.1981); *contra, In re McBee*, 20 B.R. 361 (Bkrtcy.W.D.Tex.1982). This is particularly so where the transfer is an "all in the family" transfer, i.e. incorporation of sole proprietorship or partnership or transfer from an individual to a closely held corporation. B. Clark, *supra*.

Third party lenders must take reasonable steps to search beyond the immediate record to discover the source of the debt-

or's title or any previous names under which a security interest may be filed. An exception may exist where the name change is contemplated at the inception of the agreement and is with the full knowledge and consent of the secured party. In that case failure to refile calls into question the good faith of the secured creditor under § 671.203, Fla.Stat. (1985) and the provisions of § 679.402(7), Fla.Stat. (1985) may be overridden. *See, In re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir. 1974). There is, of course, no contention by the debtor in this case that the bank acted in bad faith for it is quite obvious that the bank had no reason to suspect the name change until receipt of the debtor's letter dated the day after the petition was filed. Be there any bad faith in this case, it was on the part of the debtor.

The restaurant equipment which is the subject of the bank's security interest was all in existence at the time of the name change from Walker to Hatfields and McCoys. Therefore, the Court concludes that Mid-State was not required to refile under the debtor's new name and its lien cannot be avoided by the debtor under § 544 of the Bankruptcy Code. To hold otherwise would enable the debtor "to evade the obligations of a validly executed security agreement by the simple expedient of an alteration of its business structure." *West Coast Food Sales, Inc.*, at 709.

There is another policy consideration which weighs heavily in favor of Mid-State. Under § 818.01, Florida Statutes (1985), it is a misdemeanor of the first degree to sell or otherwise dispose of any personal property subject to a written lien without the written consent of the lienholder. The fact that the Florida Legislature has made it a crime to sell or otherwise dispose collateral without written authorization evinces its intent to protect the interest of the secured creditor. To then require the victim of the crime to refile or lose its perfected status is inconsistent and unsound. The Court can find no good rationale to find that, absent refiling, the victim's properly filed financing statement becomes invalid as the result of a criminal act.

One last point deserves mention. Mid-State has at no time consented to the assumption of the debt by Hatfields and McCoys. It has in no way recognized or established a debtor-creditor relationship with Hatfields and McCoys nor is it required to do so. Under the circumstances, Mid-State may continue to treat Walker as its principal debtor and the Court is not inclined to require the lender to take any action which could be construed as consent or acquiescence in the assumption of the debt.

On the foregoing, the Court concludes that Mid-State's security interest perfected on October 8, 1985, is not avoidable by the debtor under § 544. It is, therefore,

ORDERED that the debtor's Motion for Summary Judgment is hereby denied, and the Motion for Summary Judgment filed by the defendant, Mid-State, is hereby granted.