**In re SPIRIT OF THE WEST, INC., Debtor.**

**NORTHEASTERN BANK OF PENNSYLVANIA, Plaintiff,**

v.

**SPIRIT OF THE WEST, INC., and American Business Credit, Defendants.**

**Bankruptcy No. 5–91–01048. Adv. No. 5–92–0047.**

United States Bankruptcy Court, M.D. Pennsylvania.

June 16, 1993.

Jeffrey Treat, Honesdale, PA, for debtor/defendant Spirit of the West, Inc.

Daniel Perry, Scranton, PA, for plaintiff Northeastern Bank of Pennsylvania.

George Clark, Scranton, PA, for defendant American Business Credit.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Before this Court is an issue under the Uniform Commercial Code, Article 9–402(7), cited in Pennsylvania as 13 Pa.C.S.A. § 9402(g).

The material facts are not disputed. Spirit of the West, Inc. is a corporation primarily engaged in the retail sale of western apparel, shoes, and related items. *Stipulation Nos. 3 and 4.* On June 1, 1991, the corporation filed for relief under Chapter Eleven of the Unit-

ed States Bankruptcy Code. *Stipulation No. 10.*

This controversy arises out of a series of transactions that pre-dated the bankruptcy.

In June of 1989, Northeastern Bank of Pennsylvania ("NEB") made a loan to Grover E. Conklin III ("Conklin") and Patricia A. Krisovitch ("Krisovitch"), individually and trading as Spirit of the West, a partnership, in the amount of Ninety–Five Thousand Dollars ($95,000.00) secured by a mortgage on real estate owned by Conklin and a security interest in the inventory of the partnership. *Stipulation No. 4.* On or about September 8, 1989, NEB loaned Twenty–Five Thousand Dollars ($25,000.00) to the individuals in the form of a line of credit for Spirit of the West. The line of credit was secured by the prior security interest duly perfected by filed financing statements. *Stipulation No. 6.* On or about June of 1990, the Debtor was incorporated and the assets of the partnership were conveyed to the new corporate entity. *Stipulation No. 7.*

After incorporation, American Business Credit ("ABC") made a loan of One Hundred Fifty–Five Thousand Dollars ($155,000.00) to Grover E. Conklin III, now the principal shareholder of the Debtor. This loan was secured by a mortgage on the real estate owned by Mr. Conklin and by a security interest in the corporate inventory. *Stipulation No. 8.*

Although the September 8, 1989 NEB note was marked "paid" sometime in September of 1990, a new note, purportedly renewing the line of credit from NEB in the amount of Twenty–Five Thousand Dollars ($25,000.00), was executed on or about October of 1990. *Bank Exhibit No. 1.*

The issue presented by the parties can be set forth as follows: Is the security interest of NEB in the inventory of Grover E. Conklin III and Patricia A. Krisovitch, individually and trading as Spirit of the West, superior to the position of ABC, which filed its financing statement against Spirit of the West, Inc.?

Both parties focus on 13 Pa.C.S.A. § 9402(g) as being the controlling statute on the issue. That statute reads as follows:

**Sufficiency of name of the debtor.**—A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

The parties have correctly pointed out the importance of analyzing Section 9402(g) in deciding the efficacy of the financing statements on record. Nevertheless, in the Court's opinion, the parties have "placed the cart before the horse" in not first establishing what security agreement, if any, binds the corporation.

The parties have stipulated that Spirit of the West, Inc. executed a security agreement in inventory in favor of ABC. *Stipulation No. 8.* A copy of that agreement has been attached to ABC's answer.

On the other hand, NEB has neither alleged nor established that there was any security agreement between itself and the debtor corporation. Neither has it alleged nor established that the corporation was an alter ego of the individual owners or the former partnership.

Section 9201 of the Uniform Commercial Code states: "A security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." *13 Pa.C.S.A. § 9201.*

NEB, does not have a security agreement with the Debtor corporation. The Bank's allegation that it is a superior claimant to ABC must necessarily rely on the binding effect of its financing statement on all transferees of the collateral. This does not ap-

pear to be in dispute. The parties appear to acknowledge that NEB had the principal security interest in Spirit of the West, the partnership. Since that inventory was transferred on or about June of 1990 to the corporation at the time of its formation, it would continue in that collateral as provided by the last sentence of Section 9402(g).

■ Nevertheless, it is important to note that the Uniform Commercial Code specifically does not address the issue of the effectiveness of a financing statement with respect to collateral acquired after the incorporation. *2 James J. White & Robert S. Summers, Uniform Commercial Code (3rd ed. 1988) at pg. 386.*

NEB, in its Brief, relies on *In re Darling Lumber, Inc.,* 56 B.R. 669 (Bankr.E.D.Mich. 1986) as authority for the proposition that a secured creditor is not required to file a new financing statement whenever a Debtor changes from a proprietorship to a corporation. Unlike the present case, the secured creditor in *Darling Lumber* had a security agreement with both the partnership and the corporation. *Id.* at pg. 670.

NEB also relies on *Interfirst Bank of Abilene, N.A. v. Lull Mfg.,* 778 F.2d 228 (5th Cir.1985) for the proposition that the incorporation of an entity using the same name is not seriously misleading within the meaning of Section 9402(g). Again, this Court notes that the secured creditor in *Interfirst Bank* had security agreements with both the proprietorship and the successor corporation. *Id.* at pg. 231.

NEB cites also the case of *Borg–Warner Acceptance Corporation v. Bank of Marin,* 36 Cal.App.3d 286, 111 Cal.Rptr. 361 (1973). That Court found that a financing statement filed against the partnership Loch Lomond Yacht Sales was effective against the corporation Loch Lomond Yacht Sales, Inc. and therefore, was not "seriously misleading". No mention in that case was made of whether or not appropriate security agreements were executed by the partnership and/or corporation. That case did note that the "purpose of filing a financing statement ... is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or

prospective debtor has encumbered his assets and to govern himself accordingly in dealing with the debtor". *Id.* at pg. 288, 111 Cal.Rptr. 361.

Assuming that a filing against Spirit of the West, a partnership, is adequate to give notice to the creditors of Spirit of the West, Inc.—notice of what? At best, the creditors of Spirit of the West, Inc., the debtor herein, would make inquiry of NEB and discover that there was no security agreement with the Debtor corporation.

The facts of this case bear a remarkable similarity to those facts that were addressed in the case of *In re Scott,* 113 B.R. 516 (Bankr.W.D.Ark.1990).

In *Scott,* the Bank of Yellville ("Bank") had a security agreement with Shannon D. Scott and his wife Patricia R. Scott d/b/a K/C Audio/Video Center of Camden. The said security interest encumbered inventory, receivables, machinery, equipment, furniture and fixtures. Subsequent to the execution of that security agreement, the Debtors formed a corporation identified as "K.C. of Camden, Inc.". K.C. of Camden, Inc. executed a security agreement in favor of Borg–Warner which granted a security interest in all inventory. The Bank argued that the Uniform Commercial Code Article 9–§ 402(7), which is identical to the Pennsylvania statute at issue in the case before us, allowed its security interest to attach to collateral acquired after incorporation.

Application of section 9–402(7) to property acquired by the corporation under these facts is difficult because a security interest cannot be created under Article 9 unless the debtor has signed a security agreement in favor of the secured party, value has been given and the debtor has rights in the collateral. (Citations omitted.) A security interest in inventory is perfected when a valid financing statement, signed by the debtor, is properly filed. (Citation omitted.) In this case no security agreement was executed by the corporation in favor of the Bank and no value was extended by the Bank to the corporation. Although the last sentence of section 4–9–402(7) permits the continued

perfection of a security interest in collateral which is transferred to a new entity, new property acquired by the transferee corporation is, by definition, not collateral transferred by a debtor. Whether or not a financing statement is misleading so as to render a filing ineffective would appear to be legally irrelevant if there is no underlying security interest to perfect. *Id.* at p. 520.

Spirit of the West, the partnership, has more than effected a name change to Spirit of the West, Inc.. They have actually transferred the collateral to another entity.

Just as this Court did in the similar case of *Just for Kids, Inc.,* 150 B.R. 123 (Bankr. M.D.Pa.1992), we hereby hold that the specific collateral transferred by the Spirit of the West, the partnership, to the corporate Debtor remains encumbered by the Bank, but NEB's security interest cannot attach to newly acquired corporate assets, which would appear to be subject to the first lien of ABC.

Attached is the **ORDER** of this Court.

### *ORDER*

The prayer of Northeastern Bank of Pennsylvania requesting that this Court enter an Order confirming its perfected first lien security interest in inventory of the Debtor corporation is GRANTED but only to the extent that the Bank can establish that this inventory pre-dated the transfer to the debtor corporation. To the extent that the inventory was acquired after the incorporation of the Debtor, American Business Credit, Inc. is hereby confirmed as the first lienholder.