In the Matter of **KALAMAZOO STEEL PROCESS, INC., Bankrupt.**

**H. G. BURNETT, Trustee,** **Petitioner-Appellant,**

v.

**H. O. U. CORPORATION OF KALAMAZOO, MICHIGAN, Respondent-Appellee.**

**No. 74–1250.**

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1974.

Decided Oct. 9, 1974.

David Davidoff, Stanley, Davidoff, Long & Gray, Kalamazoo, Mich., for petitioner-appellant.

William A. Dornbos, Kalamazoo, Mich., for respondent-appellee; Charles E. Ritter, Stapelton & Adams, Kalamazoo, Mich., on brief.

Before CELEBREZZE and MILLER, Circuit Judges, and GRAY,* District Judge.

WILLIAM E. MILLER, Circuit Judge.

On November 15, 1967 Kalamazoo Steel Process, Inc., a Michigan Corporation, sold certain equipment to Roman Industrial Corporation, also a Michigan Corporation, but retained in the equipment a security interest pursuant to a security agreement executed the same day. Each party knew that the other intended to change its name in the near future. The security agreement reflected this knowledge as follows: " . . . it is anticipated that the Debtor will change its name to that of the Secured Party and it is further anticipated that the Secured Party will change its name to H.C.H. Corp." On the following day a financing statement was filed with the Michigan Secretary of State. The statement gave the debtor as Roman Industrial Corporation and the secured party as Kalamazoo Steel Process.

As envisaged by the security agreement, the parties, by amendments to their respective charters, changed their names: the secured party became H.O. U. Corporation on May 10, 1968. In November 1, 1968 the debtor, Roman Industrial, became Kalamazoo Steel Process, Inc. On November 5, 1971 H.O.U. Corporation instituted proceedings to foreclose its security interest, taking possession of the collateral on November 15. There is no dispute that as of November 5, H.O.U. Corporation knew that its debtor was insolvent. Subsequently, on December 17, 1971 Kalamazoo Steel

---

* The Honorable Frank Gray, Jr., Chief Judge for the Middle District of Tennessee, sitting by designation.

Process filed a voluntary petition in bankruptcy.

The trustee in bankruptcy contends that in order for H.O.U. Corporation to have maintained a perfected security interest in the collateral, it had to file a new financing statement or amendment at the time of the name change indicating the new name of the debtor as Kalamazoo Steel Process, Inc. This duty is said to arise because the secured party had knowledge at the time the security agreement was executed of the anticipated name change and also had notice when the change actually occurred. If it were otherwise, the trustee asserts, there would be created a "secret lien"— one which a would-be creditor or purchaser could not locate by a diligent search of the financing statements on file in Michigan. If the security interest were unperfected as of the date of the filing in bankruptcy, the right of H.O.U. Corporation to the collateral would be subordinate to that of the trustee in bankruptcy. Bankruptcy Act § 70c, 11 U.S.C. § 110c.[1]

The bankruptcy court agreed with the trustee, holding that at the time of bankruptcy, the security interest was unperfected because H.O.U. Corporation had failed to meet the good faith filing requirements of the Uniform Commercial Code adopted in Michigan. On review, the district court reversed, finding that the Code did not expressly provide that a secured party must refile when its debtor changed its name. To interpret the Code to require such a refiling would, the district court held, amount to "judicial revision" of the statute. The trustee perfected his appeal to this Court.

■ The drafters of the Uniform Commercial Code adopted a system of "notice filing." M.C.L.A. § 440.9402,

Official UCC Comment 2. The filing provisions do not require a complete description of the security agreement but rather only require facts sufficient to put concerned parties on notice to inquire further. The purpose of such filing is to give notice to potential future creditors of the debtor or to purchasers of the collateral.

■ If the filing system is to be effective in placing interested parties on inquiry it is of paramount importance that the name of the debtor is stated in such a way as not to be misleading. The Code provisions support this proposition. The section prescribing the formal requisites for financing statements excuses minor errors only when they "are not seriously misleading." M.C.L.A. § 440.9402(5).

The potential for misleading creditors or purchasers is peculiarly serious where there is an improper listing of the debtor's name. This is true because it is under the name of the debtor that financing statements are directed by the Code to be indexed. M.C.L.A. § 440.9403(4). It is significant that while provision is made that a filing in the proper place "continues effective even though the debtor's residence or place of business or the location of the collateral or its use, whichever controlled the original filing, is thereafter changed," no similar result is prescribed in the case of a change in the debtor's name. M.C.L.A. § 440.-9401(3).

■■ In the present case, once the debtor changed its name from Roman Industrial Corporation to Kalamazoo Steel Process, a diligent search of the index of financing statements in the office of the Secretary of State would not have disclosed the prior lien. We are persuaded that H.O.U. lost its perfected

---

1. Although at the time of the filing in bankruptcy H.O.U. Corporation had possession of the collateral, and possession may perfect a security interest, M.C.L.A. § 440.9302, the interest is voidable by the trustee if possession was acquired within four months of bankruptcy, and the creditor knew of the debtor's insolvency. Bankruptcy Act § 60b, 11 U.S.C. § 96b. The parties in this case agree that the question of whether the security interest was perfected depends on whether the financing statement was at all times properly filed.

security interest in the collateral of the debtor when its name was changed to Kalamazoo Steel Process. When a secured party has knowledge at the time the security agreement is executed that the debtor intends to change its name, and the new name is known to him, the secured party must act in good faith to insure that the filing under the Code not only discloses the current and correct name of the debtor but also reflects the pending name change of which the parties are aware.

■ The Code provides that "every contract or duty within this act imposes an obligation of good faith in its performance or enforcement." M.C.L.A. § 440.1203. Good faith is in turn defined as "honesty in fact in the conduct or transaction concerned." M.C.L.A. § 440.1201(19). It has been recognized by commentators that "honesty in fact" may place affirmative obligations on the secured party; "a realization that another is unaware of something or does not understand it may be considered as not conforming to the good faith standard of the Code."[2] As pointed out by the Referee in Bankruptcy, "[a] secured party cannot claim that it is being completely honest when it files a financing statement knowing that it will be indexed under a name that will be in use only so long as it takes two corporations to take the legal steps required to change their names. This makes a farce out of notice filing."[3]

H.O.U. Corporation has principally relied upon two bankruptcy court cases both of which are factually distinguishable from the present case. In In Re The Grape Arbor, Inc., 6 UCC Rep.Svc. 632 (D.C., E.D.Pa., 1969), the secured party was not aware of the name change until after the filing of the bankruptcy petition. Admittedly, a secured party cannot be required to give notice of a fact of which he has no knowledge. In In Re

Gac, (Bankruptcy No. NK 1–72 B 9; D.C., W.D.Mich., 1972), a prior decision by the same bankruptcy judge who considered the present case below, the bankruptcy court held that the secured party had no duty to refile when it learned after filing the financing statement that the debtor had changed her name following a divorce. In contrast, in the present case H.O.U. Corporation had knowledge of the anticipated change at the time of the execution of the security agreement. We do not have a case now before us requiring a determination of the responsibilities of a secured party where he learns of a name change at a later time.

■■ The district judge emphasized the problems involved with a secured party's refiling after a name change. As we view the matter with respect to the present facts, there would be no unnecessary burden placed on the secured party in this case, in light of its advance knowledge of the change, in requiring that it file in such way as to avoid the "secret lien" that results from filing only under the original name of the debtor. The secured party can require, as a condition to extending credit on the proposed collateral, that the debtor obligate itself to sign upon the occurrence of the name change an amended statement reflecting its new name. M.C.L.A. § 440.9402(4) defines "financing statement" as "the original financing statement and any amendments." Such amended statement, if filed promptly by the secured creditor would, at least in most instances, protect him against the possibility of intervening liens, arising from the bankruptcy of the debtor or otherwise.

■ As an even simpler method of avoiding any confusion, the original financing statement could be drafted to indicate the contemplated change with the result that it could be indexed under

2. Donald B. King, "Policy Decisions and Security Agreements under the Uniform Commercial Code," 9 Wayne Law Review 561 (1963).

3. In Re Kalamazoo Steel Process, Inc. (Bankruptcy No. NK 556–71 B 4, W.D. Mich., 1972) at 6–7.

both names. Such a listing of the intended change is clearly permissible since the Code expressly provides for the use of the security agreement itself (which in this case expressed the intended change) as a financing statement. M.C.L.A. § 440.9402(1). Furthermore, the directive in M.C.L.A. § 440.9403(4) for indexing certainly permits the implication that dual indexing can be required in such circumstances.

■ It is true that it would be possible for a potential creditor to search the records kept under the Michigan General Corporations Act, M.C.L.A. § 450.1 et seq., to ascertain whether the corporation to which he was considering lending credit had ever been known by another name. Nevertheless, we feel that, at least in the case of a secured party with advance knowledge, such a burden on a potential creditor or purchaser would frustrate the intention of the drafters of the Code in creating a central filing location to which potential creditors and purchasers can look to determine whether any prior lien exists against the debtor's collateral.

■ Neither does the determination that a proper filing must include a notation of any known and intended change of name of the debtor involve impermissible judicial legislation. The drafters of the Uniform Commercial Code clearly foresaw that no statute, no matter how well written, could possibly articulate in express language all of the rights and duties of the parties that could arise from unforeseeable circumstances. Judicial interpretation would be required to accomplish the broad policies and objectives of the statute as these circumstances arose. Consequently, the drafters incorporated in the Code itself the unmistakable directive that the statute should "be liberally construed and applied to promote its underlying purposes and policies." M.C.L.A. § 440.1102. This mandate is made even more specific in the Official U.C.C. Comment to this section.

This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices. However, the proper construction of the Act requires that its interpretation and application be limited to its reason.

Courts have been careful to keep broad acts from being hampered in their effects by later acts of limited scope. Pacific Wool Growers v. Draper & Co., 158 Or. 1, 73 P.2d 1391 (1937), and compare Section 1–104. They have recognized the policies embodied in an act as applicable in reason to subject-matter which was not expressly included in the language of the Act, Commercial Nat. Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U.S. 520, 36 S.Ct. 194, 60 L.Ed. 417 (1916) (bona fide purchase policy of Uniform Warehouse Receipts Act extended to case not covered but of equivalent nature). They have done the same where reason and policy so required, even where the subject-matter had been intentionally excluded from the act in general. Agar v. Orda, 264 N.Y. 248, 190 N.E. 479 (1934) (Uniform Sales Act change in seller's remedies applied to contract for sale of choses in action even though the general coverage of that Act was intentionally limited to goods "other than things in action.") They have implemented a statutory policy with liberal and useful remedies not provided in the statutory text. They have disregarded a statutory limitation of remedy where the reason of the limitation did not apply. Fiterman v. J. N. Johnson & Co., 156 Minn. 201, 194 N.W. 399 (1923) (requirement of return of the goods as a condition to rescission for breach of warranty; also, partial rescission al-

lowed). Nothing in this Act stands in the way of the continuance of such action by the courts.

The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved.[4]

Our decision does not breach the barricade between judicial interpretation and judicial legislation. We hold simply that the Code may be fairly construed to mean that a secured creditor, having knowledge at the time of the execution of the security agreement, that the debtor contemplates at a future time changing its name to a particular new name, and nevertheless proceeds to extend credit knowing that the original filing of a financing statement will not reflect the change and will therefore mislead and deceive potential creditors and purchasers, forfeits his protected interest when the change of name occurs unless he perfects the filing under the Code by one of the methods herein indicated. By pursuing such course, the secured creditor protects his own interest in the collateral and at the same time promotes one of the principal purposes of the Code to obviate secret liens.

The judgment of the district court is reversed and the action is remanded for entry of judgment affirming the decision of the bankruptcy court.

---

4. Clearly distinguishable from the case before us is a class of cases in which there has been no change in the debtor's name, but the debtor's name has been inaccurately filed or indexed. In a number of such instances the courts have upheld the creditor's security interest despite the mistake or inaccuracy, upon the theory that the name actually given is sufficiently similar to the correct name of the debtor to put the subsequent creditor or purchaser on notice and to impose the duty upon him to make further inquiry. This line of cases is well illustrated by In Re Excel Stores, Inc., 341 F.2d 961 (2nd Cir. 1965), in which the debtor's name was inaccurately listed as "Excel Department Stores" rather than under the true name "Excel Stores, Inc." The perfection of the security interest was upheld despite the mistake because the erroneous name was sufficiently suggestive of the true name that a third party would be put on notice of a possible mistake and would be required to pursue the matter by making further inquiry. For other cases falling within the same category, see In Re Platt, 257 F.Supp. 478, 482 (E.D.Pa.1966); Stafford v. Admiral Credit Corp., 280 F.Supp. 818, 822 (M.D.N.C.1968); In Re Automated Bookbindery Services, Inc., 336 F.Supp. 1128, 1131 (D.C. Md.1972) (rev'd on other grounds 471 F.2d 546). In sharp contrast to this line of cases, is the present case in which the new name of the debtor, Kalamazoo Steel Proc-

ess, Inc., was simply not filed or indexed in any form and there was nothing to place a searcher for any code filings on notice to make further inquiry. The filing and indexing here were in the office of the Secretary of State in the old name of Roman Industrial Corporation, of which a person examining the filings under the Code would be unaware. In some instances, illustrated by In Re Colorado Mercantile Co., 299 F.Supp. 55 (D.Colo.1969), and In Re Wilco Forest Machinery, Inc., 491 F.2d 1041 (5th Cir. 1974) the security interests were upheld although the name of the secured creditor was incorrectly stated. Such cases are inapposite in our situation for the obvious reason that they involve the name of the *secured party* and not the name of the *debtor*—the indexing under the Code being accomplished in the latter's name and not in the name of the *secured party*. M.C.L.A. 440.9403(4).

It is clear, from these cases and the purpose behind the Code's "notice filing" system that any obligation which a subsequent creditor may have to expand his investigation beyond the Code's filing system arises *only* when he is *alerted* by a filed financing statement or in some other manner is put on notice that further inquiry is needed. In this case the failure to provide for the expected name change rendered the filing totally inadequate to *alert* a subsequent creditor or purchaser of such a need for continued investigation.