**In re DG & ASSOCIATES, INC., DG & Associates, J & E Associates, Ten-Vol Sales Company, Bankrupts.**

**Bankruptcy No. 1–79–01289.**

United States Bankruptcy Court, E. D. Tennessee.

Feb. 10, 1981.

A. Alexander Taylor, II, Chattanooga, Tenn., for Trustee.

Robert S. Peters, Winchester, Tenn., for Warren County Bank.

· RALPH H. KELLEY, Bankruptcy Judge.

This cause came on to be heard on the trustee's objection to claim no. 6 filed by Warren County Bank. The trustee contends that the bank's claim should be declared unsecured because its financing statement did not perfect its security interest. The court finds the facts as follows:

In November, 1976 Ten-Vol Sales Company, a partnership, obtained a loan from and executed a promissory note to the bank. To secure its debt, Ten-Vol granted the bank a security interest in its present equipment and accounts receivable and its present and after-acquired inventory. The bank filed financing statements locally and centrally. Both financing statements showed the debtor as Ten-Vol Sales Company.

In 1977, about six months after the bank filed its financing statements, Ten-Vol changed its name to D G & Associates. In the summer of 1978 D G & Associates was incorporated and became D G & Associates, Incorporated.

From the time it started business in late 1975, Ten-Vol and later D G & Associates rented a building from a Mr. Duggan who was an officer of the bank. When Ten-Vol changed its name to D G & Associates, it changed its checking account at the bank and ordered new checks to reflect the name change. It did not execute a new note to the bank. It did, however, use the checks in its new name to make interest payments on the debt it incurred as Ten-Vol Sales. William Earl Dove was a principal in the business. He testified that he told Mr. Duggan about the name change shortly after it occurred and several times later.

Mr. Dove was not sure whether the partnership's assets and liabilities were transferred to the corporation. It made interest payments on the partnership debt to the bank. Apparently the incorporation was carried out so that the partnership's assets and liabilities were transferred to the corporation.

D G & Associates, Incorporated filed a petition in bankruptcy on September 12, 1979. At that time the bank had not filed a new financing statement showing the debtor's name change.

*Discussion*

An unperfected security interest in a bankrupt's property is subordinate to the trustee's rights as a judgment lien creditor. 11 U.S.C. § 110(c) (1976) (Bankruptcy Act § 70(c)); Uniform Commercial Code § 9–301(1)(b) & (3), Tenn.Code Ann. § 47–9–301 (Repl.Vol.1979).

The trustee asserts that the bank's security interest is unperfected because it learned of the bankrupt's name change, but did not file a financing statement under the new name. The controlling law is Article 9 of the Uniform Commercial Code as enacted in

Tennessee. Tenn.Code Ann. §§ 47–9–101—9–507 (Repl.Vol.1979). There are no Tennessee decisions directly in point.

Certain legal propositions are clear.

■ The underlying purpose of filing a financing statement is to give notice of the security interest. UCC § 9–402, Comment 2. To that end a financing statement must be accurate enough to give notice. UCC § 9–402(1) & (5). The general rule is that a security interest is not perfected by a filed financing statement which through some fault of the secured party does not give notice. See *In re Fowler*, 407 F.Supp. 799, 19 UCC Rep.Serv. 322 (W.D.Okl.1975); *In re May Lee Industries, Inc.*, 15 UCC Rep. Serv. 528 (U.S.D.C. S.D.N.Y.1974) *aff'd mem.* 15 UCC Rep.Serv. 532 (U.S.C.A. 2d Cir.1974); *In re Levins*, 7 UCC *Rep.Serv.* 1076 (Bankr.Ct.E.D.N.Y.1970); *In re Brawn*, 6 UCC Rep.Serv. 1031 (Bankr.Ct.D. Maine 1969).

■ Article 9 does not specifically require that a financing statement give the name of the debtor. It does require the debtor's signature and a mailing address. UCC § 9–402(1). The suggested form for financing statements asks for the debtor's name. UCC § 9–402(3). The debtor's name should be part of the mailing address. Most important, however, is that financing statements are filed and indexed by debtors' names. UCC § 9–403(3). Proper identification of the debtor is essential in order for a financing statement to give notice. See *In re Graham*, 18 UCC Rep.Serv. 1318 (Bankr.Ct.W.D.Mich.1975); *In re Levins*, above.

■ Proper identification of the debtor does not require perfect accuracy. UCC § 9–402(5). The question is whether the financing statement will give notice. If the financing statement when properly filed, indexed, and cross-indexed, will be found by a reasonable search of the filings, then notice will be given, and the security interest is perfected.[1] It does not matter how

wrong the debtor's name is if the financing statement will nevertheless be found. But if it will not be found, then the security interest is unperfected because the financing statement fails to give notice. See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 23–16 at 838–839 (1st ed. 1972).

■ At the time it was filed, the bank's financing statement properly identified the debtor as Ten-Vol Sales Company. It would give notice to anyone checking on filings under that name. The bank's security interest was perfected. *In re Humphrey*, 12 UCC Rep.Serv. 986 (Bankr.Ct.E.D.Tenn. 1973).

Later Ten-Vol changed its name to D G & Associates. A later party checking the filings under D G & Associates would not find the Ten-Vol financing statement unless it was somehow cross-indexed to D G & Associates. It does not appear that was the case. Nor does it appear that the financing statement should have been cross-indexed so that a search under D G & Associates would find it. Certainly, "D G & Associates" was not enough like "Ten-Vol Sales Company" that the financing statement would be found. See *In re Kittyhawk Television Corp.*, 516 F.2d 24, 16 UCC Rep.Serv. 1401 (6th Cir. 1975); *In re Hammons*, 438 F.Supp. 1143, 23 UCC Rep.Serv. 1077 (S.D. Miss.1977); *In re Fowler*, above.

■ The bank's financing statement alone became ineffective to give notice to later parties dealing with D G & Associates. The bank, however, argues that it had no duty to file under the debtor's new name. The court must emphasize the factual limitations under which it considers whether the bank had such a duty. First the facts show that the bank learned of the debtor's name change shortly after it occurred. Second, when the debtor changed its name the bank's financing statement, though correct when filed, became insufficient by itself to give notice. The question then is

---

1. A reasonable search may be more than searching under one name. A later party may discover the debtor's prior names.

whether the bank's security interest became unperfected because it did not file a financing statement under the debtor's new name after it learned of the name change.

At first it appears that the bank should have filed a financing statement after it learned of the name change. The bank could easily have filed and thereby given notice to subsequent parties dealing with D G & Associates. Thus the bank could have kept its security interest from becoming a secret lien on the property of D G & Associates. In such a situation equity would favor a later party who acquired an interest in the debtor's property without being put on notice of the earlier security interest. The situation appears to be within the maxim: "Where one of two parties must suffer loss he should suffer whose act or neglect occasioned the loss." 1 H. Gibson, Gibson's Suits in Chancery § 61 (5th ed. 1955).

The practical arguments against requiring a new filing are not convincing.

Subsequent parties can inquire into whether the debtor has done business under other names. But subsequent parties still may not discover the debtor's prior names. The secured party could prevent any misleading by filing a financing statement under the new name. By not doing so, the secured party gives the debtor the opportunity to mislead others. Filing a financing statement is not a monumental task.

The court is not concerned with whether secured parties should have a duty to discover name changes by the debtor. That might be a heavy burden. In this case the secured party learned of the name change shortly after it occurred. As to the secured party's ability to prove lack of notice, the subsequent party may properly have the burden of proving notice. See *In re Gac*, 11 UCC Rep.Serv. 412, 414 (Bankr.Ct.W.D. Mich.1972).

The best legal argument against requiring refiling is that Article 9 does not explicitly require it. Some of the arguments that it is implicitly required are not very convincing. The obligation of good faith technically applies only to duties imposed (explicitly?) by the UCC.[2] UCC § 1–203. It may be argued that a secured party must correct a financing statement when it becomes not "sufficient" under § 9–402(1). That merely sidesteps the controversy; the question is whether such a duty should be imposed in the absence of a specific requirement in the statute.[3]

Furthermore, an amendment has been proposed that deals with this situation. The amendment imposes a duty to re-file.[4] Arguably that shows there is no such duty under the UCC as presently in force.

In connection with this argument, it can be added that Article 9 is part of a comprehensive statute on commercial transactions, a code, that was meant to "simplify, clarify, and modernize" the law and to make it uniform among the various jurisdictions. UCC § 1–102(2). Article 9 in particular was meant to replace a bewildering mass of laws with a comprehensive scheme employing a simple structure for secured transactions. UCC § 9–101, Comment & § 9–102.

---

2. Under the statute the good faith argument is convincing if when it acquires the security interest, the secured party knows of the debtor's proposed name change. *In re Conger Printing Co., Inc.*, 18 UCC Rep.Serv. 224 (Bankr.Ct.D. Ore.1975); *In re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218, 15 UCC Rep.Serv. 571 (6th Cir. 1974). It can be said that good faith applies to the duty to file a financing statement in the first instance.

3. The UCC provision on the duration of effectiveness of a filed financing statement does not deal with its sufficiency. UCC § 9–403(2). But it also does not provide for ineffectiveness of a financing statement that becomes seriously misleading or "insufficient".

4. The proposed amendment to § 9–402 indirectly requires a secured party to discover name changes. But it limits the loss of perfection to later acquired collateral.

> Where the debtor so changes ... its name ... that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time.

UCC § 9–402 (1972 version).

It should also be added that a name change arguably is like an unauthorized transfer of collateral. Section 9–306(2) of the UCC provides that a security interest continues in collateral transferred by the debtor without the secured party's authorization. Under that section a perfected security interest will continue in existence and perfected after an unauthorized transfer. The security interest will continue perfected even though parties dealing with the transferee will not have notice of the secured party's interest. The court does not believe the situation is analogous.

The transferee of collateral subject to a security interest perfected by filing is deemed to have notice of it. Section 9–306(2) preserves the security interest only if the debtor's transfer was unauthorized by the secured party. If parties dealing with the transferee are misled, it will be primarily because of the debtor's and the transferee's actions, not the secured party's actions.

It is surprising that there is no explicit refiling requirement for situations such as this. Article 9 adopted a notice system of filing. When filing is required, perfection of the security interest depends on the sufficiency of the financing statement to give notice of the essential facts. A name change by the debtor can make a financing statement insufficient to give notice. When the secured party learns of the change, there are no convincing practical arguments against requiring the secured party to re-file. The legal argument by analogy to § 9–306(2) is unconvincing. The proposed amendment arguably shows that no such requirement should be implied, though Professors White and Summers believe the amendment codifies the better rule under Article 9 as presently in force in Tennessee. J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code, § 23–16 at 959 (2d ed. 1980).

It might be argued that the equitable rule mentioned above leads to a lapse of perfection by estoppel. Equitable rules apply under UCC § 1–103. By not requiring a re-filing, Article 9 does not exclude the possibility of an estoppel.

■ But estoppel may properly arise only in narrower circumstances, where someone has actually been misled. See *Union Bank & Trust Company v. Fred W. Wolf Company*, 114 Tenn. 255, 86 S.W. 310 (1904). In that situation the court would have less trouble with the argument that a subsequent party can learn of a debtor's name changes.

The court believes that the bank's security interest should nevertheless be held unperfected. Under § 9–301(1)(b) an unperfected security interest is subordinate to the rights of a judgment lien creditor without *knowledge* of the security interest. Under § 70(c) of the Bankruptcy Act the trustee is deemed not to have knowledge of security interests in the bankrupt's property. 4B Collier on Bankruptcy ¶ 70.53 (14th ed. 1975).

Furthermore § 1–201(25) of the UCC provides:

(25) A person has "notice" of a fact when

(a) he has actual knowledge of it; or

(b) he has received notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than reason to know . . . .

See also UCC § 1–201(26) (notice and notification).

In light of that definition of knowledge, § 9–301(1)(b) reflects a policy that a judgment lien creditor not be denied priority because he *might have* discovered the security interest. It is irrelevant that some security interests are perfected, temporarily or permanently, without filing a financing statement. That generally is true in situations where the circumstances are likely to give notice, another notice system is provided, or a filing requirement is inappropriate for practical reasons. See UCC §§ 9–302, 9–304, 9–305, 9–306; J. White & R. Sum-

mers, Handbook of the Law under the Uniform Commercial Code § 23–5 (2d ed. 1980).

The court thinks that the policy against secret liens as embodied in § 9–301(1)(b) and the equitable rule taken together make for a broad "estoppel" that in effect makes the bank's security interest unperfected against the trustee.

The bank failed to re-file its financing statement after it learned of a name change by the debtor. The bank's failure to re-file made its original financing statement unlikely to give notice. The trustee is in the position of a lien creditor with neither notice nor knowledge of the bank's security interest. The bank could easily have refiled its financing statement so as to give notice. It did not. Accordingly, the trustee should prevail.

The conclusion is consistent with the general rule that a security interest is not perfected by a filed financing statement which through some fault of the secured party fails to give notice.

By itself the transfer of assets from D G & Associates to D G & Associates, Inc. might not have affected the bank's security interest. UCC § 9–306(2). It was the previous name change from Ten-Vol Sales Company to D G & Associates, and the bank's failure to re-file that caused its security interest to become unperfected. The financing statement which remained on file was seriously misleading.

This memorandum constitutes findings of facts and conclusions of law. Bankruptcy Rule 752.