In re Thomas P. TYLER and Georgia L. Tyler, Kyova Corporation and Tri-State Molded Plastics, Inc., Debtors.

The HUNTINGTON NATIONAL BANK, et al., Plaintiffs,

v.

TRI-STATE MOLDED PLASTICS, INC., Defendant.

Bankruptcy No. 82–00127–BKC–JAG.
Adv. No. 82–0093–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

May 27, 1982.
Order Denying Rehearing Aug. 16, 1982.

Harry L. Durant, Smathers & Thompson, Miami, Fla., for Algemene Bank Nederland N.V.

C. Peter Buhler, Gunn, Venney & Buhler, Miami, Fla., for debtors.

Steven R. Brownstein, Paul, Landy, Beiley, Harper & Metsch, P.A., Miami, Fla., for Creditors' Committee on behalf of Kyova.

Jack R. Pigman and Charles M. Cobbe, Porter, Wright, Morris & Arthur, Columbus, Ohio, and A. Rodger Traynor Jr., Fowler, White, Burnett, Hurley Banick & Strickroot, P.A., Miami, Fla., for Huntington Nat. Bank.

ORDER ON VALIDITY, PRIORITY AND AMOUNT OF LIENS OF THE HUNTINGTON NATIONAL BANK AS OF THE TIME OF THE FILING OF THE PETITION BY TRI–STATE MOLDED PLASTICS, INC. INITIATING THESE PROCEEDINGS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding was commenced by a complaint for relief from the automatic stay to permit plaintiff Huntington National Bank ("HNB") to enforce its

security interests in collateral held by the debtor, or, in the alternative, for adequate protection. An agreed order authorizing use of cash collateral (C.P. No. 2) was entered on January 29, 1982 and by that order a hearing was set for February 17, 1982 to show cause why the cash collateral order should not continue in full force and effect. Algemene Bank Nederland N.V. (Algemene), the largest unsecured creditor, filed its response to the order to show cause (C.P. No. 6) raising many objections, including the objection that not all of the prepetition security interests and liens of HNB were valid and perfected. Following a continued hearing on the order to show cause on February 26 and 27, an order was entered granting HNB's *ore tenus* motion to amend its complaint to add a count for the determination of the validity, priority and amount of its liens (C.P. No. 8).

The hearing on validity, priority and amount was held on April 7, 1982. The significant facts have been stipulated to or are not disputed. At the time of the filing of its petition in bankruptcy the debtor, Tri-State, was indebted to HNB in the principal amount of $1,218,680.40 under a promissory note dated November 29, 1978, a copy of which is attached to the complaint as Exhibit P. Tri-State was also indebted to HNB in the aggregate principal amount of $239,630.47 on a revolving line of credit with various promissory notes, copies of which are attached to the complaint as Exhibits Q through AA.

At this time Kyova Corporation, of which Tri-State is a wholly-owned subsidiary, was also indebted to HNB. (See order on validity, priority and amount of liens in *Huntington National Bank et al. v. Kyova Corporation,* Adversary Case No. 82–0092–BKC–JAC–A.) Kyova executed promissory notes, copies of which are attached to this complaint as exhibits A through O.

To secure all of its debts to HNB, Tri-State executed and delivered to HNB several security agreements, copies of which are attached to the complaint as Exhibits OOO, PPP, WWW, XXX, and YYY. These gave HNB a security interest in Tri-State's accounts, equipment, inventory and tangible and intangible property, including after-acquired property. Financing statements, copies of which are attached to the complaint as Exhibits QQQ through VVV, were properly filed by HNB at that time. The balance of the indebtedness under the November 29, 1978 note (Exhibit P) was also secured by a mortgage. (A copy of the mortgage deed is attached to the complaint as Exhibit ZZZ). That mortgage secured no other indebtedness.

At the time these financing statements were filed the debtor was incorporated as Tri-State *Moulded* Plastics, Inc. On May 2, 1979 it filed a corporate name change, changing its name to Tri-State *Molded* Plastics, Inc. HNB knew of the change but did not file changed financing statements to supplement the earlier ones which had been filed with the *Moulded* spelling. There was no evidence of whether Algemene knew of the earlier spelling.

An information request by Algemene to the Ohio Secretary of State under the current name of the debtor (Tri-State *Molded* Plastics, Inc.), made in preparation for this trial, did not reveal any of the financing statements which had been filed under *Moulded,* but did locate the later filings made after the name change to *Molded* (Objector ABN's Exhibit No. 1). Similar requests made by Huntington, also in preparation for trial, to the county recorders of Franklin and Urbana counties did reveal all filings under both names. (Plaintiff HNB's Exhibits Nos. 2 and 3). There was no evidence that Algemene had made any earlier search or relied on the apparent absence of the filings which were, in fact, made under the *Moulded* spelling.

Algemene does not dispute that the security agreements were originally perfected but asserts that HNB's failure to refile financing statements after the name change caused its perfection to cease as to those security agreements so that HNB loses its priority to the bankruptcy trustee.

While the facts involved are deceptively simple, this is a very difficult case to decide. The court concludes that Huntington is not

perfected as to collateral acquired by Tri-State after September 2, 1979 and that the trustee has priority over HNB as to this collateral.

All the determinative events occurred in Ohio and the parties agree that Ohio law is applicable.[1] There are two U.C.C. provisions adopted by Ohio in the Ohio Revised Code which are pertinent to the narrow issue of whether perfection continues despite the name change. Section 1309.39, (UCC 9–402) lists the formal requisites of a financing statement and provides in subsection (E):

> A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

An amendment, effective January 1, 1979, applies the same standard to financing statements which cover collateral acquired under the original security agreement after a name change of a debtor. Section 1309.39(G), in pertinent part, provides:

> Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time.

■ Prior to this amendment, only case law dealt with the effect of a subsequent name change on perfection. In the absence of any other legislative expression, several cases applied the "seriously misleading" standard of subsection (E) to gauge the effectiveness of a financing statement which was incorrect following a debtor name change, as well as to gauge the effectiveness of newly filed financing statements. The amendment of subsection (G) now addresses the effect of a debtor's name

change on perfection. If (E) is now (subsequent to the amendment) inferred to address the same subject, (G) becomes redundant. This court cannot apply an interpretation which makes a statute meaningless. Therefore it concludes that only the provisions of (G) are to be applied to evaluate the effectiveness of a financing statement following a debtor name change.

This distinction is material because (G) is more limited in scope than (E). Subsection (G) provides that if a name change causes a previously satisfactory financing statement to become seriously misleading, the financing statement is ineffective to perfect as to collateral acquired more than four months after the name change. This therefore affects after-acquired collateral only. Security interests in collateral acquired prior to the cut-off date (four months after a name change) would remain perfected even if the new name were seriously misleading.

As far as Huntington's liens here go, the security interests would be perfected as to collateral acquired prior to September 3, 1979. As to that class of collateral acquired by Tri-State after September 2, 1979, the earlier loans will not be secured by such collateral unless the Tri-State *Moulded* Plastics financing statements are not "seriously misleading" for the debtor Tri-State *Molded* Plastics.

The cases of *Corwin v. RCA Corp. (In re Kittyhawk Television Corp.)*, 516 F.2d 24 (6th Cir.1975), (applying Ohio law), and *White Motor Credit Corp. v. Euclid National Bank*, 30 U.C.C.Rep.Serv. (Callaghan) 331 (Ohio Ct.App.1980) both upheld the validity and priority against the trustee of security interests perfected by financing statements filed prior to name changes. In each case the court held that the name change (from Kittyhawk Broadcasting Corp. to Kittyhawk Television Corp. and from A.A.A. Lift Truck, Inc. to A.A.A. Lift Truck Leasing, Inc., respectively) was minor and not seriously misleading. *Kittyhawk* was decided prior to the amendment on the basis of

---

1. Although state law is being applied because of its incorporation into federal bankruptcy law (not under diversity jurisdiction) and this court

therefore applies federal choice of law standards, there can be no doubt that Ohio law is applicable.

§ 1309.39(E). *White Motor Credit Corp.* cited the amendment in a footnote, but followed the Kittyhawk reasoning. Although both these cases applied subsection (E) rather than (G) they did interpret the "seriously misleading" standard.

The cases cited by the parties here, and the arguments ably made by counsel in their briefs discuss the many conflicting considerations raised by facts such as these. See also *In re DG & Associates, Inc.,* 9 B.R. 94, 31 UCC Rep.Serv. 347 (Bkrtcy.E.D.Tenn. 1981); *In re Brawn,* 6 UCC Rep.Serv. 1031 (Bkrtcy.Ct.D.Maine 1969); *Bank of North America v. Bank of Nutley,* 94 N.J.Super. 220, 227 A.2d 535, 4 UCC Rep.Serv. 56 (1967); *Dietrich-Post Co. of Washington, Inc. v. Alaska National Bank of the North (In re McCauley's Repographics, Inc.),* 30 UCC Rep.Serv. 801 (9th Cir.1981).

■ The determination of whether or not an error is seriously misleading is essentially a factual one, but in giving content to the term "misleading" a court is necessarily aware of the competing considerations. On the one hand, the Uniform Commercial Code is intended to simplify as well as make uniform the process of perfection of security interests. To this end the notice filing system was adopted as a means calculated to provide basic information to third persons without being unduly burdensome to secured parties. A misleading financing statement fails to convey the necessary information to third parties, and, since the ability to file an initially correct financing statement is within the secured party's control, the U.C.C. has properly provided that an incorrect financing statement will not lead to perfection unless the errors are minor and not misleading.

It is arguable that errors should be judged strictly against the secured party, exactly because so little *is* required of the creditor. Errors in the debtor's name bring in additional concerns, because the debtor's name is the basis for the indexing on which the entire noticing system relies. It would seem that the nature of the particular recordation system must be another consideration because it necessarily affects whether an error in a name is actually misleading. For example, an intelligent human looking at an alphabetical proximity to each other and might be expected to investigate further. But if the recording officer's records are retrievable only by computer matching it may be unfeasible to locate any records except those filed under the absolutely identical name under which the search is made. Where filing is required in more than one location (as with state and county offices) the systems may differ. Is a name misleading or not where it can be found in one recording office but not another?

Inevitably, the reliance or lack of it by a third party and the knowledge of each party become considerations. Yet these are contrary to the notice filing philosophy, which is not dependent on actual knowledge.

Where a name change occurs after an initially proper filing, there are further concerns. A secured party may be unaware of the change, and the unfairness of causing his disperfection again raises the questions of knowledge and reliance of third parties challenging the perfection. A prudent inquirer could learn of prior names, but should he have that burden?

When the issue arises in bankruptcy, another dimension exists. Because the trustee has the position of a hypothetical lien creditor only, there is likely to be a bias toward the secured creditor, especially where the violation appears to be merely a technical one. However, such a bias is not justified in view of the rights which were intentionally given to the trustee for the protection of all creditors.

■ Looking at the facts of this case, the court finds that the name change was seriously misleading. This court concedes that such a finding is not reconcilable with the factual findings in *Kittyhawk* and *White Motor Credit Corp.* Likewise, any intelligent human seeing both names would be expected to investigate both. It is difficult to conceive of a more insignificant change, and there is no reason HNB should have had reason to believe refiling was neces-

sary. Nevertheless, the court cannot ignore the fact that a search of the records under the current name revealed none of the financing statements in question. While an error by the recording official will not defeat perfection, however harsh the result to third parties, it does not appear that the result here was due to a clerical error because subsequent financing statements filed with the changed spelling *were* found in the same search. If filing systems such as this are incapable of locating financing statements filed with anything but the precise name of the debtor it may be that any inaccuracy in the debtor's name is "seriously misleading". The result in this case is harsh for the creditor, but an opposite result negates the noticing system.

It is, therefore,

ORDERED and ADJUDGED that Huntington's security interests set forth above are perfected as to collateral acquired by Tri-State prior to September 3, 1979 and Huntington has priority over the trustee as to that collateral. The trustee has priority over Huntington as to property acquired by Tri-State on or subsequent to September 3, 1979.

## ORDER DENYING REHEARING

The court has considered the motion of the Huntington National Bank to reconsider, amend, and modify the order on validity, priority and amount of liens entered May 27, 1982, the response of the creditor Algemene Bank Nederland N.V. to the motion, and argument at the hearing held on July 13, 1982.

The only significant new point raised was the assertion, contrary to what the Huntington conceded at trial, that recording in the county recorder's office was required for some of the collateral (i.e., accounts). This issue was raised under Paragraphs IV and VII of the memorandum in support of the motion, and is of concern to Huntington because Huntington did, in fact, file with the county recorder, and a search of the county recorder's files revealed all the financing statements, while the secretary of state's search did not.

It must be kept in mind that the determinative issue under § 1309.39(G) of the Ohio Revised Code is whether or not the financing statement became "seriously misleading" upon the change of name of the debtor. Even if the county recorder's office were the correct place of filing, the same issue would exist as to the financing statements filed there. In making the "seriously misleading" determination, the court did consider the practicalities of the filing system involved and the practicalities in the secretary of state's office caused the older (and by that time inaccurate) financing statements not to be found, while the practicalities in the county recorder's office caused them to be found. However, the court might reach the same conclusion about whether the financing statements were seriously misleading, regardless of where they were to be filed.

Huntington's argument about place of filing hinges on one comma which was inserted by the Ohio legislature when it adopted the Uniform Commercial Code. Section 1309.38 of the Ohio Revised Code (UCC 9–401) provides in pertinent part:

(A) The proper place to file in order to perfect a security interest is as follows:

(1) when the collateral is equipment used in farming operations, or farm products, or accounts, or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the county recorder in the county of the debtor's residence, ...

This provision is the third alternative of the uniform draft, with the exception of the insertion of a comma after "accounts". The official comments to the uniform draft make it clear that the section quoted above refers only to matters related to farming. For example, at Paragraph 3 of the Comment it is stated:

In states where it is felt wise to preserve local filing for transactions of essentially local interest, either the Second or Third Alternative of subsection (1) should be adopted. Paragraph (1)(a) in both alternatives provides county (town-

ship, etc.) filing for consumer goods transactions and for agricultural transactions (farm equipment, farm products, *farm accounts* and crops). (emphasis added)

Paragraph 4 adds:

In a state which has adopted either the Second or Third Alternative, *central filing would be required when the collateral was* goods except consumer goods, farm equipment or farm products (including crops), or was documents or chattel paper or was *accounts* or general intangibles, *unless related to a farm.* (emphasis added)

The Ohio Revised Code Annotated observes that Ohio has adopted the third alternative of the uniform draft, and then sets forth the official comments as quoted above, with the addition of citations to the Ohio Revised Code sections.

Huntington argues that because of the insertion of the comma after "accounts", § 1309.38 requires filing of financing statements for all accounts, whether or not related to farming operations, in the county recorder's office. The court recognizes that the placement of one comma may change the effect of an entire section. However, no legislative history or case precedent has been cited here. In view of the Comments and the design of Article 9 in its entirety as well as of this section, without any other support for the position, this argument is frivolous. Therefore this issue has no effect on the court's order previously entered.

Clarification of the May 27 order may be useful with regard to some of the other points raised by Huntington in its motion. The court did not overlook the fact that "some", specifically, the *later* financing statements with the new, correct spelling of the name were found in a search. The court considered this irrelevant and totally disagrees with Huntington's position that knowledge of the later financing statements should put a third party on notice or inquiry of *earlier* security agreements between the debtor and that secured party. The third party could just as easily ask the debtor about every security agreement the debtor was a party to, but that was not the system which was elected by the Code drafters.

The court in its May 27 order did not treat Huntington's prior financing statements as though they were *filed* with errors. However, upon the name change of the debtor they became erroneous and the court concluded that that error was in fact "seriously misleading" under § 1309.39(G) which specifically deals with the effect on perfection of a name change of a debtor.

While reaching a result opposite to that in the cases of *Corwin v. RCA Corp., (In re Kittyhawk Television Corp.),* 516 F.2d 24 (6th Cir.1975) and *White Motor Credit Corp. v. Euclid National Bank,* 30 U.C.C.Rep.Serv. (Callaghan) 331 (Ohio Ct.App.1980), this court followed the same process of considering the facts of the case to finally make its determination of whether or not the financing statement became seriously misleading upon the debtor's name change. While those courts' reasoning processes may not have been as fully described, they also had to rely on assumptions about the operation of the filing system. For example, in *Kittyhawk* it is stated: " ... we conclude that the names of the debtor were sufficiently similar and that a third party could reasonably be expected to be put on notice or at least to be required to make further inquiry." 516 at 28. This conclusion implies that the third party was supplied with the other name and then had the duty to inquire further about it. For Huntington to prevail in its argument that this court did not follow the law of Ohio as set forth in *Kittyhawk,* the statement quoted above would have to mean that, because the names were similar, a third party could reasonably be expected to think up all the possibly similar names and make a search of each. We do not so interpret the statement. Instead, we interpret it to have been based on an assumption about the filing system which the facts in this case do not permit us to make, namely that a search request would show the other name.

All other grounds raised by Huntington were reptitious of its earlier arguments or

insufficient to lead to a different result. It is, therefore,

ORDERED and ADJUDGED that the motion of the Huntington National Bank to reconsider, amend, and modify order on validity, priority and amount of liens is denied.