**In re MARTA GROUP, INC., Debtor.**

**EMERSON QUIET KOOL CORPORATION, Plaintiff,**

v.

**MARTA GROUP, INC., Defendant,**

**and**

**Heritage Commercial Finance Company, Intervening Defendant.**

**Bankruptcy No. 83–01276G.**

**Adv. No. 83–1145G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 29, 1983.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff, Emerson Quiet Kool Corp.

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor/defendant, Marta Group, Inc.

Howard T. Glassman, Wexler, Weisman, Forman & Shapiro, Philadelphia, Pa., for intervening defendant, Heritage Commercial Finance Corp.

David S. Hope, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and Scott L. Hazan, New York City, for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

A creditor, Emerson Quiet Kool Corporation ("Emerson"), has commenced an action based upon its consignment of goods to the debtor seeking, in the alternative, either an injunction barring the use or sale of the goods, or a modification of the automatic stay permitting the creditor to repossess the goods. For the reasons stated herein we will modify the stay and allow Emerson to repossess a portion of the goods.

The facts of the case are as follows:[1] Marta Corporation of Pennsylvania ("MCP") was a Pennsylvania corporation-for-profit which operated as a cooperative buying group for member dealers in the home appliance and air conditioning businesses. MCP converted to a not-for-profit corporation known as Marta Group, Inc. ("Marta"), on May 10, 1979. Marta filed for relief under chapter 11 of the Bankruptcy Code on March 25, 1983.

On September 24, 1976, MCP granted Heritage Commercial Finance Company ("Heritage") a security interest in all of MCP's present and after-acquired inventory and certain other goods in exchange for a loan. Financing statements perfecting the security interest were filed under the Uniform Commercial Code ("UCC") of Pennsylvania on September 30, 1976. In 1981 Heritage filed timely financing statements to continue the perfected status of its security interest.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

MCP began ordering goods on consignment from Emerson in 1972. Pursuant to the Pennsylvania UCC, Emerson sought to protect its interest in the consigned goods by filing financing statements in compliance with 13 Pa.Cons.Stat. § 2326. Accordingly, Emerson prepared and presented to Marta financing statements which erroneously named MCP as the consignee. The documents were signed by Marta on December 7, 1982, and were filed with the appropriate state and county recording offices within a week. Apparently realizing that the documents bore Marta's former name, Emerson submitted to Marta in January of 1983 newly drafted financing statements which were promptly filed at the appropriate recording offices by January 14, 1983. Immediately prior to the filing of Marta's petition for relief, Emerson mailed to the appropriate recording offices a duly signed amendment to the December filing which purported to change the listed name of the debtor from MCP to Marta. But the amendment was not recorded until after the filing of the petition. After the filing of the petition Emerson filed another duly signed amendment to the December UCC filing which sought to change the listed name of the debtor from Marta to the original designation of MCP. Not until Heritage conducted a search of the UCC records on February 19, 1983, did it realize that Emerson had filed financing statements to protect its interest in goods consigned to Marta.

■ In Pennsylvania consigned goods may be subject to the claims of a consignee's creditors while they are in the consignee's hands. 13 Pa.Cons.Stat. § 2326(b) and (c). Section 2326 states as follows:

§ 2326. Sale on approval and sale or return; consignment sales and rights of creditors

(a) Definitions.—Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(1) a "sale on approval" if the goods are delivered primarily for use; and

(2) a "sale or return" if the goods are delivered primarily for resale.

(b) Rights of creditors of buyer generally.—Except as provided in subsection (c), goods held on approval are not subject to the claims of the creditors of the buyer until acceptance; goods held on sale or return are subject to such claims while in the possession of the buyer.

(c) Consignment sales.—Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery.

(1) complies with an applicable law providing for the interest of a consignor or the like to be evidenced by a sign;

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing provisions of Division 9 (relating to secured transactions).

(d) Treatment of "or return" term.—Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this division (section 2201) and as contradicting the sale aspect of the contract within the provisions of this division on parol or extrinsic evidence (section 2202).

When goods are delivered to a consignee prior to compliance with § 2326(c), the goods thus delivered will be subject to the claims of the consignee's creditors although goods delivered after that time will be free from such claims. In the case at bench

Emerson relies solely upon § 2326(c)(3) which requires the filing of financing statements under Division 9 of the UCC.

■ Emerson asserts that MCP's attempted conversion to Marta did not have the intended result of ending MCP's existence since Marta continued to deal with Emerson under MCP's name without informing Emerson of the conversion. Although it concedes that Marta *commenced* its existence at the time of the conversion, Emerson urges that Marta be estopped from asserting that MCP *ceased* existing at that time. Consequently, Emerson would have us find that the goods delivered to Marta before Emerson knew of the conversion be deemed delivered to MCP. Thus, the consigned goods would be in the possession of an entity different from the debtor and would not be subject to the claims of the Marta's creditors. Emerson relies on a series of cases which hold that individuals holding themselves out as a corporation may be estopped from denying the existence of the putative entity. We find this argument without merit since Pennsylvania law has provided for situations such as this by mandating that, upon conversion from one corporation to another, creditors must look to the successor corporation for the satisfaction of outstanding liabilities. 15 Pa.Cons.Stat. § 7956(a). Furthermore, the goods Emerson thought it was delivering to MCP were intermingled with the remainder of Marta's goods. Thus, any subsequent creditor lending Marta funds in exchange for a security interest in inventory would rightfully believe that the Emerson goods constituted a part of the collateral securing the debt. Consequently, the application of an estoppel against Marta and in favor of Emerson would adversely affect the rights of third parties who were not a part of any inequitable conduct which could give rise to an estoppel against them. In addition, since Emerson's consignment goods were intermingled with Marta's goods, the appli-

cation of an estoppel would violate the legislature's intent in creating a system of notice filing for consignment goods as found in 13 Pa.Cons.Stat. § 2326. As stated in *In Re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218, 1221 (6th Cir.1974):

> The drafters of the Uniform Commercial Code adopted a system of "notice filing," M.C.L.A. § 440.9402, Official UCC Comment 2. The filing provisions do not require a complete description of the security agreement but rather only require facts sufficient to put concerned parties on notice to inquire further. The purpose of such filing is to give notice to potential future creditors of the debtor or to purchasers of the collateral.

In all aspects pertinent to this case the Michigan UCC, cited above, mirrors the Pennsylvania UCC. Since the use of an estoppel to bar the assertion of MCP's proper name would contravene the intent of the legislature, the estoppel cannot be applied. This result is not undermined by 13 Pa. Cons.Stat. § 1103 [2] since the applicability of an estoppel in this situation has been displaced by the clear legislative purpose in creating a system of notice filing.

■ Emerson next asserts that the filing of the financing statements in December in the former name of MCP is sufficient to protect its interest in the consigned goods against the interests of Marta's creditors. As stated in Pennsylvania UCC at 13 Pa. Cons.Stat. § 9402:

> § 9402. Formal requisites of financing statement; amendments; mortgage as financing statement
>
> (a) General rule.—A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicat-

---

**2.** § 1103. Supplementary general principles of law applicable

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

ing the types, or describing the items, of collateral.

\* \* \* \* \* \*

(h) Effect of minor errors.—A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading. Section 9402(a) requires that the "names of the debtor" appear on the financing statement. This requires the use of the name the debtor bore at the time the financing statement was signed. The fact that Emerson conducted business with Marta under its former name for a period of years without being informed of the change is of no moment. The creditor must be sufficiently diligent to insure that the name on the financing statement is correct at the time the statement is signed.[3]

■ Emerson contends that the listing of the name "Marta Corporation of Pennsylvania" rather than the proper name of "Marta Group, Inc." was not seriously misleading within the meaning of 13 Pa.Cons.Stat. § 9402(h). Since UCC financing statements are filed in the recorders' offices in alphabetical order under the name of the debtors, the names may be seriously misleading unless a reasonable searcher would find the financing statement or would be put on notice to inquire elsewhere about it. The cases decided under § 9402(h) arrive at widely divergent results. *See, e.g., In Re Platt*, 257 F.Supp. 478 (E.D.Pa.1966) (a listing under "Platt Fur Co." was not seriously misleading when name should have been "Henry Platt"); *Huntington National Bank v. Tri-State Molded Plastics, Inc.* (In re Tyler), 23 B.R. 806 (Bkrtcy.S.D.Fla.1982) (discrepancy between "Tri-State Moulded Plastics, Inc.," and "Tri-State Molded Plastics, Inc.," seriously misleading). The determination is essentially a factual one which is predicated on several competing concerns which have not been given adequate attention by the parties in the case at bench. *See, e.g., In Re Tyler, supra*, 23 B.R.

806 (noting that a computer retrieval system of recorded data may not find the name of a debtor which contains a minor misspelling). We therefore find that Emerson has not borne its burden of proving that the discrepancy in the name of the debtor is not seriously misleading.

■ In addressing the amendments to the financing statements we note that one set was mailed to the proper state and county officials prior to the filing of the petition for reorganization although the actual filing of the amendments occurred afterwards. The second set of amendments was clearly mailed after the filing of the petition. The Pennsylvania UCC provides that, "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this division." 13 Pa.Cons.Stat. § 9403(a). The legislature apparently did not intend that filing would be complete upon mailing. Consequently, the filing of the financing statements did not occur until their receipt by the filing officers which was after the filing of the reorganization petition. These attempts to amend the financing statement are in violation of the automatic stay imposed by 11 U.S.C. § 362(a), in particular § 362(a)(4). As a general rule actions taken in violation of the stay are void and without effect. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); 2 *Collier on Bankruptcy* ¶ 362.11 (15th ed. 1982).

■ The only UCC filings which have yet to be addressed are those of January, 1983. These financing statements were filed under the name of Marta and purport to be valid although Heritage asserts that its security interest in after-acquired property has priority over Marta's consignment interest since Heritage was not given notice of Emerson's intent to consign goods to Marta. Heritage's assertion is predicated upon 13 Pa.Cons.Stat. § 9312 which states

---

**3.** This case is to be distinguished from those in which the debtor changes its name *after* the creditor perfected its security interest.

that a holder of a purchase money security interest in inventory takes priority over the holders of a pre-existing security interest is after-acquired inventory only if the purchase money lender provides prior notice to those with a security interest in the after-acquired inventory. The Official Comment to the 1972 UCC states that an "uncertainty has existed under the 1962 Code whether the filing rule in Section 2–326(3) [§ 2326(c)] applicable to true consignments requires only filing under Part 4 of Article 9 or also requires notice to prior inventory secured parties of the debtor under Section 9–312(3)." 6A *Bender's Uniform Commercial Code Service* § 9–114, at 1–778 (1983 ed.). In answer to this problem a new section to the UCC was proposed, § 9–114. It was adopted in Pennsylvania on November 26, 1982, and became effective 180 days thereafter. It states as follows:

§ 9114. Consignment

(a) General rule.—A person who delivers goods under a consignment which is not a security interest and who would be required by section 2326(c)(3) (relating to consignment sales) to file under this division has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if:

(1) the consignor complies with the filing provision of Division 2 (relating to sales) with respect to consignments (section 2326(c)(3)) before the consignee receives possession of the goods;

(2) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor;

(3) the holder of the security interest receives the notification within five years before the consignee receives possession of the goods; and

(4) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

(b) Exception.—In the case of a consignment which is not a security interest and in which the requirements of subsection (a) have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

Since the pertinent financing statements were filed after the passage of this act but prior to the effective date, we look to the transition provisions which provide as follows in § 6:

Section 6. Transition provisions as to priorities

Except as otherwise provided in the transition provisions of this act, the provisions of Title 13 of the Pennsylvania Consolidated Statutes (relating to commercial code) in effect prior to the effective date of this act shall apply to any questions of priority if the positions of the parties were fixed prior to the effective date of this act. In other cases, questions of priority shall be determined as provided by this act.

Pub.L. 696, No. 201, § 6, Nov. 26, 1982. Since the priorities of the parties were fixed prior to the effective date of the act we must resolve this issue without the direct authority of § 9114 although the policies and rationale supporting the passage of this section may offer guidance. This situation is analogous to cases arising under § 9312(c) and in fact the Official Comments to the UCC following § 9–114 state that the "requirement of notice in this section conforms closely to the concepts and the language of Section 9–312(3) [§ 9312(c)] which should be consulted together with the relevant Comments." 6A *Bender's Uniform Commercial Code Service* § 9–114, at 1–777 (1983 ed.). As stated in a recent case in this circuit which addressed the issue at hand:

In considering the relationship of a secured party vis-a-vis a holder of a purchase money security interest, the draft-

ers of the Code recognized that purchase money security interests may put secured parties with an after-acquired property clause in inventory to a serious disadvantage. These secured parties are quite susceptible to the loss of their collateral through the replacement of inventory on a purchase money security basis and, unless notified of this change, may be lulled into a false sense of security. If notified, however, the secured parties can protect their rights by acting quickly to correct or salvage the situation. To protect against an unfair dissipation of a creditor's collateral in inventory, the Code requires that actual notification be given. These considerations are equally applicable to all kinds of consignments.

Consignors, like holders of a purchase money security interest, enable a consignee secretly to replace inventory with goods on consignment and thereby undermine the secured party's position of priority in the inventory. Requiring that consignors, in addition to filing, check for and notify secured parties with conflicting interests of the consignment is a reasonable and workable answer for the problem at hand. Moreover, this resolution permits all consignments—those creating security interests and those which do not—to be treated in the same manner.

*Gerber v. Bildisco* (In Re Bildisco), 11 B.R. 1019, 1022–23 (D.N.J.1981), *aff'd without opinion* 681 F.2d 804 (3d Cir.1982). Finding this reasoning persuasive, we hold that prior to the effective date of § 9114, a creditor holding a perfected security interest in after-acquired property takes priority over a consignor unless the consignor has provided notice to the creditor. An exception to this rule is made when the creditor holding the security interest in after-acquired property had actual notice of the consignment filing. *GBS Meat Industry Pty. Ltd. v. Kress-Dobkin Co., Inc.,* 474 F.Supp. 1357, 1362–63 (W.D.Pa.1979), *aff'd without opinion sub nom. Moree Meat Ind. Pty. Ltd. v. Kress-Dobkin Co.,* 622 F.2d 579 (3d Cir.1980). In the case at bench Heritage had actual knowledge of the consignment filing on February 19, 1983, when it conducted a search of the pertinent UCC records. Thus, goods consigned before that date are subject to Heritage's claims while goods consigned after that date are not.

 Heritage correctly notes that January financing statements were filed within the ninety day preference period of 11 U.S.C. § 547(b) and asks us to consider this fact in light of Emerson's request for relief from the stay. Although the hearing on an action for relief from the stay is not the proper forum for hearing counterclaims, the court, in its discretion, may take these counterclaims into account in determining whether to continue the stay. We so held in *LaSalle National Bank v. Harrow Leasing* (In Re Harrow Leasing), 32 B.R. 688 at 689 (Bkrtcy.E.D.Pa.1983). Although we do not formally resolve the merits of this action under § 547(b), we consider the essence of the cause of action and doubt that § 547(b) has any effect since the filing of the financing statements in January, coupled with Heritage's discovery of them in February through the UCC search, protects only those goods consigned after the search date. Even assuming that the filing of the financing statements is a transfer, we find that no case has been established under § 547(b) since the requirement of an antecedent debt is not present. § 547(b)(2).

 We have established that the goods which were consigned after Heritage's search of the UCC files are free of the claims of this creditor. To the extent that these consigned goods can be distinguished from the debtor's other goods, they are not property of the estate. 4 *Collier on Bankruptcy* § 541.08 at 541–42 (15th ed. 1982). Although Marta has no property interest in these goods the automatic stay bars Emerson from reclaiming them without leave of the Bankruptcy Court since they are in the debtor's possession. As stated in pertinent part in 11 U.S.C. § 362(a):

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under sec-

tion 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

* * * * * *

(3) any act to obtain possession of property of the estate or of property from the estate;

* * * * * *

Section 362(a)(3) bars creditor action to obtain property *from* the debtor's estate even though the property is not part of the estate. 2 *Collier on Bankruptcy* § 362.04 at 362–31 (15th ed. 1982). In requesting relief from this stay Emerson relies upon § 362(d)(1) which states as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

* * * * * *

In one of the most common factual patterns under § 362(d)(1) a secured creditor seeks relief upon allegations that the debtor's equity cushion in the property is slim or nonexistent. A creditor's substantiated averments on this basis, if not refuted or undercut by the debtor, are sufficient for granting relief under § 362(d)(1). *Provident Mutual Life Ins. Co. v. Winslow Center Associates* (In Re Winslow Center Associates), 32 B.R. 688 at 690, (Bkrtcy.E.D.Pa. 1983). Since a debtor has no equity and little more than a possessory interest in consigned goods, this same rule applies by analogy in consignment cases and thus Emerson has established cause for relief under § 362(d)(1). We will modify the stay to allow Emerson to repossess the goods consigned after Heritage's search of the UCC files on February 19, 1983. We note that this relief does not resolve the claims of creditors other than Heritage who may have an interest in the goods arising from security interests in after-acquired inventory who were not noti-

fied of the consignment filing. Since the debtor and the trustee have no interest in these goods, we will leave to another tribunal the resolution of any competing claims between Emerson and these other creditors.